TWINSBERRY FARM, APPELLEE, *v.* CONSOLIDATED RAIL CORPORATION, APPELLANT.

(No. 1859 — Decided September 14, 1983.)

*Mr. David D. Noble,* for appellee.

*Mr. Charles A. Morgan, Jr.,* for appellant.

GEORGE, J. The plaintiff, Twinsberry Farm, filed this action seeking a mandatory injunction. The claim alleged that a culvert underneath the roadbed of one of Consolidated Rail Corporation's railroad lines violated R.C. 4959.01 in that it was of insufficient size to prevent flooding on Twinsberry Farm's property during periods of heavy rain. Conrail conceded that when the culvert was improperly maintained, flooding would result. However, Conrail argued that, with proper maintenance, the culvert was adequate. The trial court found that the culvert was inadequate and, therefore, in violation of R.C. 4959.01. The trial court ordered Conrail to provide a culvert "capable of handling all but twenty-five year frequency storms" and a "runoff at the rate of 168 cubic feet of water per second." Conrail appeals claiming that the judgment of the trial court is against the manifest weight of the evidence and contrary to law in several respects.

Conrail's first claim is that the twenty-five year storm requirement is unreasonable.

R.C. 4959.01 provides:

"Except where the roadbed of a railroad extends through or by swampland, the company or person operating the railroad shall make and keep open ditches or drains along such roadbed of depth, width, and grade sufficient to conduct water accumulating at the sides of the roadbed from the building or operation of the railroad to some proper outlet."

In order to give practical effect to this statute it is essential to establish a standard based on the evidence of each case, which necessarily involves line-drawing. Clearly, the statute does not contemplate the drainage of a flood of remarkable magnitude. Equally clear, however, is the fact that when a culvert provides inadequate drainage under ordinary circumstances, it violates the statute. Thus, the task before a trial judge is to provide an equitable remedy which will require compliance with the spirit of R.C. 4959.01, and which will at the same time relieve the railroad company of the burden of performing the impossible.

The trial court's order in the case at bar provides such an equitable result. There was testimony at trial from an engineering expert recommending a culvert designed to drain the water from at least a ten-year storm. The trial court's order required a culvert sufficient to drain one hundred sixty-eight cubic feet of water per second from all storms up to but not including a twenty-five year frequency storm. This requirement is not unreasonable in light of the statute or the evidence. It equitably balances the interest of Twinsberry Farm in having flood-free property and that of Conrail in not being required to drain all rain water no matter how abnormal.

The second argument of Conrail is that, since there was no flooding for a period of four years in the 1970's the adequacy of the culvert was established. However, the evidence demonstrates that

flooding occurred at irregular intervals since at least 1930, if not before. The evidence was more than sufficient to support a finding that the culvert was inadequate. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

Conrail's next claim is that the judgment was against the manifest weight of the evidence in that the trial court rejected Conrail's claim of prescriptive rights over Twinsberry Farm's property. Conrail had argued at trial that since the flooding had occurred since 1930, a prescriptive right to flood had ripened. However, the evidence indicates that the flooding was by no means regular or continuous. In *Shelton* v. *Mosier* (1924), 19 Ohio App. 89, relied upon by Conrail, the court held that one might obtain a prescriptive right to flood another's land if such flooding existed for the prescribed period to substantially the same degree. Here the lack of such continuity is supported by the evidence. Therefore, the judgment of the trial court was not against the manifest weight of the evidence.

Conrail's final argument is that Twinsberry Farm was estopped to complain of the flooding as the Berry brothers purchased the farm with full knowledge of the flooding. In order for estoppel to be a valid defense, it must be shown that Twinsberry Farm was aware of the nuisance and intended to acquiesce in it. 41 Ohio Jurisprudence 2d 163, Nuisances, Section 67. Although Twinsberry Farm concedes knowledge of the flooding, there was a lack of evidence in the record which would demonstrate an intent to accept it. Thus, estoppel has no applicability to the instant case.

The claims of Conrail being overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and MAHONEY, J., concur.