JUDGMENT: Affirmed in part and Reversed in part and Remanded
 OPINION
Appellants here are more than forty residents of Marne, Licking County, Ohio. They appeal a judgment of the Court of Common Pleas of Licking County, Ohio, entered in their action against defendants Conrail and Consolidated Rail Corporation, Caprail I, Inc., and the Columbus and Ohio River Railroad, referred to herein collectively as the Railroads.
Appellants assigns two errors to the trial court:
 ASSIGNMENTS OF ERROR I. THE TRIAL COURT INCORRECTLY GRANTED CONRAIL A DIRECTED VERDICT ON PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES.
 II. THE JURY DETERMINATION THAT CONRAIL WAS NOT LIABLE TO NUMEROUS PLAINTIFFS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The Railroads assign four errors to the trial court:
 CROSS ASSIGNMENTS OF ERROR I. THE COURT ERRED IN FAILING TO INSTRUCT THE JURY REGARDING "FLOOD OF REMARKABLE MAGNITUDE" AS ESTABLISHED IN TWINSBERRY FARM V. CONSOLIDATED RAIL CORP. (1983), 11 OHIO APP. 3D 182.
 II. THE AWARDS FOR PERSONAL ANNOYANCE AND DISCOMFORT ARE NOT SUPPORTED BY THE EVIDENCE.
 III. THE COURT ERRED IN FAILING TO GRANT DIRECTED VERDICTS BASED ON THE FAILURE OF THE EVIDENCE TO CREATE A QUESTION OF FACT REFERABLE TO THE EXISTENCE OF A DUTY OF DEFENDANT TO PREVENT THE FLOOD WHICH IS THE SUBJECT OF THIS LAWSUIT.
 IV. THE COURT ERRED BY REFUSING TO ALLOW APPELLANT TO INTRODUCE EVIDENCE OF COLLATERAL BENEFITS PURSUANT TO OHIO REVISED CODE SECTION 2317.45.
We will consolidate the two appeals for purposes of this opinion only. On June 14, 1990, a severe rain storm hit central Ohio. More than three inches of rain were measured at the Newark Waterworks in three hours, with 1.1 inches falling in just fifteen minutes. The rain caused widespread flooding and damage over an area including two watersheds in Marne. Montgomery Road, which runs North and South through Marne, divides the two watersheds. Bowling Green Watershed is to the West and No-name Creek Watershed is to the East. Both watersheds drain to the South through culverts under a set of East, West railroad tracks which were owned by Conrail in June of 1990. A ten-foot concrete culvert serves Bowling Green Run, and two concrete culverts 48 inches in diameter serve No-name Creek. The rain storm on June 14, 1990, caused flash flooding in both watersheds, and damaged the property of plaintiffs, who all reside in one of the two watersheds, and all but one on the North side of Conrail's tracks. The flash flooding came so quickly the residents of the area had to be evacuated by boat, and the flood left standing water several feet deep. At trial, the parties developed the prior history of the area. One of the plaintiffs testified he had experienced flooding in his neighborhood near No-name Creek in approximately 1963. He contacted the Pennsylvania Railroad, which owned the railroad right-of-way before Conrail. Although the county commissioners and PUCO became involved, no actions were taken as a result of the complaints. Likewise, during the 1980's, certain residents near the No-name Creek notified Conrail they were experiencing flooding after every heavy rain. Again, no steps to were taken to alleviate the problem. It appears this flooding was limited to a small area. The June 14, 1990 flood was extensive, and did a great deal of property damage. The exact amount of rainfall in Marne was the subject of some dispute because there was no exact reading the amount of rain that fell in Marne. However, judging from the rainfall in various surrounding areas, the 24 hour rainfall in Marne on the day in question was between 3.08 and 3.79 inches. At trial, experts testified regarding what size culvert Conrail should have maintained in the area.
 I
In their first assignment of error, the Railroads urge the trial court should have given the jury instruction they requested. As the Railroads correctly assert, the plaintiffs' case was essentially that they breached a duty of reasonable use of land in the way they dealt with surface water runoff. In Twinsberry Farm v. Consolidated Rail Corporation (1983), 11 Ohio App.3d 182, the Court of Appeals for Wayne County reviewed an action for injunction brought by a landowner whose property was flooded. The trial court there found the culvert was not adequate, and ordered the railroad to provide a larger one. On review, the court of appeals found R.C. 4959.01, which requires a railroad to provide sufficient drainage from its road bed to a proper outlet, does not contemplate the drainage of a flood of "remarkable magnitude", Twinsberry Farm at 183. Citing the Twinsberry Farm case, the railroads filed requests for jury instructions including instruction to the jury using the language of Twinsberry Farm. Specifically, the railroads sought an instruction that they were not required to provide drainage for a flood of "remarkable magnitude." The trial court refused to give the instruction. A trial court must give full and complete jury instructions relevant and necessary for the jury to decide the case, see State v. Comen (1990), 50 Ohio St.3d 206. A trial court gives a requested jury instruction only if it is a correct statement of law as applied to the facts in a given case, and also where reasonable minds could reach a conclusion sought by the instruction, Murphy v. Carrollton Manufacturing Company (1991), 61 Ohio St.3d 585. A trial court has discretion to refuse a proposed jury instruction which is redundant or immaterial, Bostic v. Conner (1988), 37 Ohio St.3d 144. The trial court gave extensive instructions to the jury. We have reviewed those instructions, and we find them to be a correct statement of Ohio law and relevant to the facts in issue. The trial court specifically instructed the jury there was no statute or regulation requiring or prohibiting railroad drainage culverts of a size such as to provide drainage of water from a 10, 25, 50, or 100 year flood. The court instructed the jury a reasonable-use rule must be applied. We find the trial court's jury instruction was proper, and sufficiently conveyed to the jury its duty to determine whether the railroads' culverts were adequate. The court is not required to use specific nomenclature or nebulous language. The trial court's instruction was a straight-forward explanation of the principles of tort law the jury should apply to the case. We conclude the trial court did not err in its instructions to the jury. The first assignment of error is overruled.
 II
In their second assignment of error, the railroads argue the jury award for personal annoyance and discomfort was against the manifest weight of the evidence. Eight plaintiffs were awarded $25,000 each, in addition to the various property damage awards. Appellant argue because the jury awarded these persons widely varying amounts for property damage and loss of use, yet awarded each the same amount for personal annoyance and discomfort, this demonstrates the award was punitive and predicated solely on passion and prejudice rather than the evidence. Our standard of reviewing a claim a jury verdict is against the manifest weight of the evidence is to review the record and determine whether there is sufficient competent and credible evidence from which the trier of fact could reasonably reach its conclusion, C.E. Morris v. Foley Construction Company (1978), 54 Ohio St.2d 279. While the assessment of damage is within the province of the jury, a court should reverse if it finds passion and prejudice or the award is manifestly excessive, Moskovitz v. Mt. Sinai Medical Center (1994), 69 Ohio St.3d 638. As appellees point out, each plaintiff testified regarding the unique circumstances and the significant discomfort and annoyance the flood caused. The value to be placed on this annoyance and discomfort is not necessarily related to the actual value of the property lost. This court will not re-weigh the evidence in an effort to second guess the jury. We have reviewed the record, and we find nothing inflammatory or improper from which we could conclude the jury was misled. Instead, we find the record contains sufficient evidence to support the verdict, and we further find compensating each person in the same amount does not demonstrate error. The second assignment of error is overruled.
 III
At trial, the railroads moved for a directed verdict, asserting the appellees had failed to present evidence the railroads breached a duty of reasonable care to these appellees. The railroads concede the appellees called three experts to discuss the adequacy of the drainage in the area. Each of the experts gave an opinion regarding the size of the culvert required. Two of the experts appeared to favor sufficient culverts to protect against a 100 year flood, while the third offered the opinion the American Railroad Engineering Association requires a culvert with a capacity to accommodate a 25 or 50 year storm. One of the experts, Dr. Byron Nolte, testified according to the 24 hour rainfall measure at the Newark Sewage Treatment Plant, the storm on June 14, 1990, was a 25 year storm, which means a storm of this magnitude would occur at least once every 25 years. Civ.R. 50 (A) requires a court when ruling on a motion for a directed verdict, to construe the evidence most strongly in favor of the non-moving party, and to determine whether on any issue reasonable minds could come to but one conclusion on the evidence submitted. We have reviewed the record, and we find there was sufficient testimony presented to the jury regarding the railroads' duty of care to the property owners. The third assignment of error is overruled.
 IV
In their fourth assignment of error, the railroads argue the trial court erred by refusing to permit them to introduce evidence of collateral benefits, namely federal aid and grants the appellees received to repair their homes. The evidence was offered pursuant to R.C. 2317.45. During the pendency of this case, the Ohio Supreme Court found that particular statute is unconstitutional, see State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999),86 Ohio St.3d 451. We conclude the trial court did not err in finding the collateral benefit rule barred introduction of this evidence. Accordingly, the fourth assignment of error is overruled.
 Cross Assignment of Error I
Appellees' first assignment of error challenges the court's directed verdict on their claim for punitive damages. Appellees argue they presented evidence the railroads had been notified even small rains created flooding, and failed to rectify the problems. Appellees argue this demonstrates a conscious and reckless disregard for the safety of the homeowners in the area. As noted supra, in ruling on a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, and must decide if reasonable minds could come to but one conclusion on the evidence submitted. The weight of the evidence and credibility of the witnesses are not relevant in determining the appropriateness of the directed verdict, see Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116. On granting the motion for directed verdict, the trial court discussed the balancing test the railroads used to determine whether enlarging the culverts would create flooding downstream that would damage other inhabitants of the area. The court also noted the saturated condition of the ground contributed to the extraordinary flood which occurred. The court concluded it would be improper for a jury to consider punitive damages in this case. We have reviewed the record, and we find the trial court impermissibly weighed the evidence and the credibility of the witnesses in reaching its conclusion. We find there was sufficient evidence presented to warrant a reasonable trier of fact to determine punitive damages were appropriate. In Preston v. Merty (1987), 32 Ohio St.3d 334, the Ohio Supreme Court found a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm is sufficient to support an award of punitive damages. Here, the trier of fact could have believed from the evidence presented the railroads appreciated the potential harm and failed to act. We conclude the trial court should have permitted the jury to consider punitive damages. The first cross assignment of error is sustained.
 Cross Assignment of Error II
In their second assignment of error, appellees urge the jury verdict was against the manifest weight of the evidence as to certain plaintiffs to whom they did not award damages for property loss. In addition, certain appellees who did receive compensation for damages for their real and personal property did not receive compensation for annoyance and discomfort. Appellees urge the record is replete with evidence each plaintiff has sustained substantial property damage and was subjected to extreme inconvenience. The railroads' reply each plaintiff who suffered damage was uniquely situated, and the jury reviewed each person's claim individually. One of appellees' experts testified that several of these persons purchased or built houses on the flood plain, and would have experienced flooding in their homes regardless of culvert size. The railroads urge if the jury believed this testimony, it could have concluded the railroads were responsible for some damage to some of the homes but not to all. Regarding appellees James J. Snedden, Sr., and James J. Snedden, Jr., the jury awarded compensation for property damage, but not annoyance and discomfort damages. The railroads urge this ruling is supported by the case of Horrisberger v. Mohlmaster (1995), 102 Ohio App.3d 494, which allows for recovery of annoyance and discomfort only if there is a temporary injury to real estate. Where, as here, the plaintiffs suffer a permanent loss of home, annoyance and discomfort damages are not warranted. We have reviewed the record, and we find there was sufficient competent and credible evidence presented which would warrant a reasonable jury to come to the conclusion reached. Accordingly, we find the verdict is not against the manifest weight of the evidence. The second assignment of error is overruled.
For the reasons stated in the memorandum opinion on file, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to that court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., Hoffman, J., concur Farmer, J., dissents