JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Mark Holda (hereinafter "appellant") appeals the trial court's jury verdict in favor of defendantsappellees. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} According to the case, appellant, as executor for the estate of Mary Messner ("Mary"), filed a medical malpractice action seeking recovery for the death of Mary. Appellant's complaint was filed on July 10, 2002, and asserted negligence, wrongful death, and survivorship claims against defendants-appellees Robert Blankfield, M.D., Sabino D. Velloze, D.O., Triloc Sharma, M.D., and Cardiovascular Medicine Associates, Inc., as well as defendants University Primary Care Physicians and Touaj Taghizadeh, M.D.[1] A case management conference was held on October 3, 2002. Expert report deadlines, final pretrial and jury trial dates were set at the case management conference. The case was later assigned to a visiting judge because of a heavy trial schedule on the docket of the original judge. The trial began on February 2, 2004 and ended on February 12, 2004 with a jury verdict in favor of defendantsappellees.
 {¶ 3} According to the facts, Mary was a 67-year-old patient of family practitioner Dr. Blankfield. Mary had a long medical history significant for polio, scoliosis of the spine, elevated cholesterol, hypertension, anxiety attacks and depression.[2] She had been under a lot of stress as a result of her children's spousal and financial problems. In addition, Mary's husband was extremely ill.
 {¶ 4} Mary had an office visit with Dr. Blankfield in January 2000, in which she reported that her husband had passed away, and she was consequently upset. On April 25, 2000, Mary visited Dr. Blankfield and complained of feeling sweaty and dizzy two hours after taking her blood pressure medication. She also complained of left arm and shoulder pain. Dr. Blankfield subsequently saw Mary on May 9, 2000 and she was doing better.
 {¶ 5} On December 15, 2000, at an office visit with Dr. Blankfield, Mary complained of chest pain and stated that she was depressed about her husband's death. Dr. Blankfield documented that Mary's chest pain was not associated with any shortness of breath, nausea, vomiting or sweating. Dr. Blankfield then made a referral for her to see a cardiologist. Prior to visiting with a cardiologist, Mary had two additional office visits with Dr. Blankfield. On December 22, 2000, Mary again complained of chest pain, as well as anxiety and depression. She was seen on January 22, 2001 by Dr. Blankfield for her continued anxiety.
 {¶ 6} On January 30, 2001, Mary was seen in consultation by cardiologist Dr. Sharma.[3] Dr. Sharma interpreted an EKG as essentially the same to an EKG performed in 1996.[4]
 {¶ 7} Later, on February 8, 2001, Mary presented to the offices of Dr. Sharma and Dr. Velloze for an adenosine myocardial perfusion imaging study, otherwise known as an adenosine stress test.[5] Adenosine is administered to patients like Mary, who are generally unable to keep up with the treadmill aspect of the stress test.[6] Prior to the injection of various chemicals and thereafter, nuclear images are taken of the heart. Additionally, an EKG is performed during the test in order to evaluate any changes in the heart.
 {¶ 8} Dr. Sharma's partner, Dr. Velloze, interpreted Mary's adenosine stress test. Dr. Velloze is board certified in internal medicine and cardiology, cardiology subspecialties of interventional cardiology and nuclear cardiology.[7] Dr. Velloze's interpretation of the stress test was that there was no focal area of stress induced ischemia.[8] Dr. Velloze also found there to be borderline transient ischemic dilation. As such, Dr. Velloze believed that there was no evidence that Mary's heart was damaged.[9]
 {¶ 9} In addition to the above-mentioned findings, Dr. Velloze reported that based on a five-point scale, Mary's stress test was equivocal.[10] The EKG findings from Mary's stress test were also nondiagnostic for heart ischemia.[11] An echocardiogram was performed on February 9, 2001 and was similarly normal.[12] Subsequently, Dr. Sharma reviewed the reports from Mary's stress test, the EKG and the echocardiogram. Based upon her diagnostic studies and her clinical status, Dr. Sharma concluded that the nature of Mary's chest pain could not be from her heart.
 {¶ 10} If the patient's chest pain was because of a heart problem, Dr. Sharma would have expected such chest pain to have produced a severely abnormal stress test and echocardiogram, but neither test demonstrated such a cardiac origin. Consequently, Dr. Sharma concluded that there was no evidence that Mary had suffered any heart ischemia.
 {¶ 11} Subsequently, Dr. Sharma's office telephoned Mary regarding her test results. Dr. Blankfield was sent copies of Dr. Sharma's office notes and the reports of her diagnostic studies. Additionally, there was a follow-up appointment made with Dr. Sharma for February 13, 2001, but it needed to be rescheduled. However, this appointment was not rescheduled by Mary.[13]
 {¶ 12} Mary instead returned to see Dr. Blankfield on February 21, 2001 and reported that she was feeling better. She also said that she had occasional chest pain but she associated it to her back pain and scoliosis.[14]
 {¶ 13} Mary continued to see Dr. Blankfield for office visits on March 12, 2001, April 10, 2001, May 8, 2001, June 12, 2001 and July 19, 2001.[15] At these office visits, she never complained of any chest pain or cardiac problems.[16] She merely continued to see Dr. Blankfield for her continued depression and for medication adjustments for same. Mary suffered a sudden and unexpected cardiac arrest on July 23, 2001. As a result, Mary passed away.
 II. {¶ 14} Appellant's first assignment of error states the following: "The trial court erred when it gave the jury an inadequate, ambiguous, misleading, and confusing instruction on negligence that did not relate to the issues presented at trial."
 {¶ 15} "The trial court does not commit reversible error if the instructions are sufficiently clear to enable the jury to understand the law as applied to the facts." Atkinson v. Internatl. Technegroup, Inc.
(1995), 106 Ohio App.3d 349, 365. "The instructions found in Ohio Jury Instructions are not mandatory. Rather, they are recommended instructions based primarily upon the case law and statutes." State v.Martens (1993), 90 Ohio App.3d 338, 343. When examining alleged errors in a jury instruction, a reviewing court must consider the jury charge as a whole and "must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." Kokitka v. Ford Motor Co., 73 Ohio St.3d 89,1995-Ohio-84, quoting Becker v. Lake Cty. Mem. Hosp. W. (1990),53 Ohio St.3d 202, 208. Whether the jury instructions correctly state the law is a question of law which an appellate court reviews de novo. Murphyv. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585.
 {¶ 16} Jury instructions are within the trial court's discretion and will not be disturbed absent an abuse of discretion. State v. Guster
(1981), 66 Ohio St.2d 266, 271. In reviewing jury instructions on appeal, we must consider the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987),33 Ohio St.3d 1, 13.
 {¶ 17} We find no error in the trial court's instructions. A review of the record indicates that the trial court made sure that the parties were satisfied with the instructions. The court demonstrated its concern that the parties were satisfied with the jury instructions when it stated the following:
"THE COURT: * * * All right. Is there any reason for any of the counselto approach the bench for additions or corrections?
 "MR. CRANDALL: Not on behalf of the Plaintiff, Your Honor.
 "THE COURT: Does anybody want to talk to the court at the sidebar?
 "MR. GOLDWASSER: We're satisfied on behalf of Dr. Blankfield, YourHonor.
 "MR. JONES: Fine, Your Honor."
 {¶ 18} In addition, the trial court's instruction on hindsight in this particular case was a completely accurate statement of the law applicable to the facts presented at trial. Moreover, despite appellant's claim that the instruction was erroneous, he failed to affirmatively establish how the trial court's entire jury charge was misleading or confusing as a result of the inclusion of the hindsight jury charge. Appellant failed to submit relevant case law or legal authority that a jury charge on hindsight is inappropriate in this medical malpractice action.
 {¶ 19} Appellant's reliance on Moore v. Alliance Obstetrics, Inc.,
5th Dist. No. 2001CA00006, 2002-Ohio-1138, is misplaced. Moore is distinguishable and inapplicable to this case. The Fifth District inMoore found that the trial court's notions of further, present and past, in the context of judging conduct "at the time" while "looking forward," were internally misleading and confusing. These circumstances do not exist in the case at bar.[17]
 {¶ 20} When considering the jury charge as a whole, we find that the trial court's conduct did not mislead the jury in any matter materially affecting appellant's substantial rights. We find that the trial court did not give the jury inadequate, ambiguous, misleading, or confusing instructions.
 {¶ 21} Appellant's first assignment of error is overruled.
 III. {¶ 22} Appellant's second assignment of error states the following: "The trial court erred in refusing to allow the plaintiff to use the depositions of certain expert witnesses to impeach defendants."
 {¶ 23} Appellant argues that the court erred when it did not allow him to use the various expert witness depositions to impeach the defendants; however, we disagree.
 {¶ 24} Pursuant to Evid.R. 611(B), cross-examination shall be permitted on all relevant matters and matters affecting credibility. "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion." State v. Treesh (2001), 90 Ohio St.3d 460, citing State v. Acre (1983), 6 Ohio St.3d 140, 145. "Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. The Supreme Court has explained this standard as follows:
"An abuse of discretion involves far more than a difference in * * *opinion * * *. The term discretion itself involves the idea of choice, ofan exercise of the will, of a determination made between competingconsiderations. In order to have an `abuse' in reaching such adetermination, the result must be so palpably and grossly violative offact and logic that it evidences not the exercise of will but perversityof will, not the exercise of judgment but defiance thereof, not theexercise of reason but rather of passion or bias."
 Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87.
 {¶ 25} Trial judges may impose reasonable limits on cross-examination based on a variety of concerns, such as harassment, prejudice, confusion of the issues, the witness's safety, repetitive testimony, or marginally relevant interrogation. Delaware v. Van Arsdall (1986), 475 U.S. 673. Further, not all error pertaining to limitations on cross-examination is reversible error. State v. Long (1978), 53 Ohio St.2d 91, 97-98.
 {¶ 26} We find that appellant did not establish any prejudice relating to either Dr. Silver's or Dr. Graeber's discovery depositions. As previously stated above, the trial judge may impose reasonable limits on cross-examination based on a variety of reasons, such as repetitive testimony or marginally relevant interrogations.
 {¶ 27} The trial court in the case at bar may have determined that appellant's use of Dr. Silver's or Dr. Graeber's deposition was becoming marginally relevant and exercised its discretion in limiting the use of this deposition.
 {¶ 28} In light of all of the evidence presented, we find the trial court's conduct to be proper. We further note that there is no evidence of any abuse of discretion regarding the discovery depositions during trial.
 {¶ 29} Appellant's second assignment of error is overruled.
 IV. {¶ 30} Appellant's third assignment of error states the following: "The trial court erred when it displayed bias and hostility against plaintiff and conducted the trial proceedings in a manner that favored the defendants and caused prejudice to the plaintiff."
 {¶ 31} Appellant argues that the trial court displayed bias and hostility against him and conducted the trial in a manner favoring the defendant; however, we saw no evidence of this and therefore disagree.
 {¶ 32} The term "biased or prejudiced," when used in reference to a judge before whom a cause is pending, implies a hostile feeling or spirit of ill will, undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts. State ex rel. Pratt v.Weygandt (1956), 164 Ohio St. 463.
 {¶ 33} The record in the case at bar is without any evidence demonstrating ill will with the formation of a fixed anticipatory judgment on the part of the trial court. Appellant argues that the trial court's comments, i.e., that he was a fast talker, telegraphed to the jury that he was incompetent. We find appellant's argument to be without merit.
 {¶ 34} The trial court determined that the jury may be having trouble following a certain line of questioning. Therefore, the court asked counsel to "slow down" the questions directed to Dr. Sharma so that the jury would not be confused. The trial court stated the following:
"THE COURT: Would you please slow down? There's a group calledFast Talker of America, you're not a member.
 "MR. CRANDALL: I'm actually the president of that group, Judge.
 "THE COURT: There's also one for slow talkers. We don't like fasttalkers.
 "MR. CRANDALL: Mr. Kelley is the president of that.
 "THE COURT: Try to give a little gap between your question and theanswer so that the jury can hear both."[18]
(Emphasis added.) {¶ 35} The comments in the record were made in jest as a casual reminder to the attorneys to talk slower for the court reporter and the jury. We do not find the comments above, nor any other comments in the record, to be mean spirted or of ill will. We have examined the evidence in the case at bar in its entirety and do not find any bias or prejudice on the part of the trial court.
 {¶ 36} Appellant's third assignment of error is overruled. Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Nahra, J.*, Concurs; Gallagher, P.J., Concurs, with separate Concurringopinion.
*Sitting by assignment: Judge Joseph J. Nahra, retired, of the Eighth District Court of Appeals.
[1] The court granted plaintiff's motion to substitute defendant-appellee University Primary Care Practices, Inc. for defendant University Primary Care Physicians. (R.14). Defendant Touaj Taghizadeh, M.D., was voluntarily dismissed. (R.18). Dr. Blankfield was employed by University Primary Care Practices, Inc. and Drs. Velloze and Sharma by Cardiovascular Medicine Associates, Inc.
[2] See joint exhibit 4.
[3] Joint exhibit 2. Tr. 1044.
[4] Tr. 1055.
[5] Joint exhibit 2.
[6] Tr. 860.
[7] Tr. 843-845.
[8] Joint exhibit 2. Tr. 984.
[9] Tr. 987.
[10] The reason for calling the test equivocal was the finding of "borderline transient ischemic dilation of the left ventricle which is a very complex topic." Tr. 899-900. However, Mary's test revealed an artifact that explained this particular finding. Mary had a breast artifact that appeared in the test as an artificial abnormality. Tr. 89.
[11] Tr. 873.
[12] Tr. 1072. The interpretation of Mary's echocardiogram was not an issue at the time of trial.
[13] Tr. 1097.
[14] Tr. 570-571.
[15] Joint exhibit 4.
[16] Tr. 571.
[17] A court of appeals is bound by the decisions of the Ohio Supreme Court. However, it is not bound by the decisions of a court of appeals from another district. Hogan v. Hogan (1972), 29 Ohio App.2d 69. Moreover, an unreported decision, like the Moore case, is not controlling authority upon this court. Beder v. Cleveland Browns, Inc. (1998),129 Ohio App.3d 188.
[18] Tr. 456-457.