[Cite as *Miller v. Andrews*, 2013-Ohio-2490.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CAROL S. MILLER | : | JUDGES: |
| | : | |
| Plaintiff-Appellant/ | : | Hon. Patricia A. Delaney, P.J. |
| Cross-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | Case No. 12CA44 |
| DANA H. ANDREWS, M.D., ET AL. | : | |
| | : | |
| Defendants-Appellees/ | : | |
| Cross-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court of
Common Pleas, Case No. 2010 CV 0116 H

JUDGMENT:     AFFIRMED IN PART; REVERSED AND
REMANDED IN PART

DATE OF JUDGMENT ENTRY:     June 13, 2013

APPEARANCES:

For Appellant/Cross-Appellee:          For Appellees/Cross-Appellants:

MICHAEL L. INSCORE          GERALD J. TODARO
13 Park Ave. West, Suite 400          KAREN L. CLOUSE
Mansfield, OH 44902-1741          2075 Marble Cliff Office Park
Columbus, OH 43215

*Delaney, P.J.*

{¶1} Plaintiff-Appellant/Cross-Appellee Carol S. Miller appeals the May 14, 2012 judgment entry of the Richland County Court of Common Pleas that journalized a jury verdict in favor of Defendants-Appellees/Cross-Appellants Dana Andrews, M.D. and American Health Network of Ohio.

{¶2} Defendant-Appellees/Cross-Appellants Dana Andrews, M.D. and American Health Network of Ohio appeal the May 14, 2012 judgment entry of the Richland County Court of Common Pleas that awarded sanctions to Miller based on a discovery issue.

## APPEAL OF PLAINTIFF-APPELLANT CAROL S. MILLER

### *FACTS AND PROCEDURAL HISTORY*

{¶3} Plaintiff-Appellant/Cross-Appellee Carol S. Miller, born in 1942, was admitted to MedCentral Health System on December 17, 2008 with a diagnosis of acute bilateral pulmonary emboli and deep vein thromboses (DVT) in both legs. DVT is a blood clot in the veins of the lower leg. A pulmonary embolus occurs when the blood clot in the vein of the leg breaks away and enters the pulmonary system. A pulmonary embolus can result in death. The physicians at MedCentral Health System administered the medication Heparin to treat the blood clots causing the DVT and pulmonary emboli. Heparin is a blood thinner. While on Heparin, Miller experienced a drop in her platelet count. A side effect of the use of Heparin is an immune response called Heparin Induced Thrombocytopenia (HIT). HIT reduces the amount of platelets in the system and can cause clots to form, which is converse to the purpose of Heparin. HIT is diagnosed by determining if there are antibodies in the system.

MedCentral ordered a test to determine whether Miller had HIT, but the results of the test were not in her record; however, MedCentral diagnosed Miller with HIT. MedCentral stopped the administration of Heparin and switched Miller to the blood thinner medication called Lovenox, which is low molecular weight Heparin. MedCentral continued to give Lovenox to Miller until her discharge from the hospital on December 21, 2008. Upon her discharge, Miller was prescribed Coumadin, a blood thinner medication taken orally.

{¶4} On December 26, 2008, Miller was readmitted to MedCentral due to mental confusion. She suffered a seizure in the emergency room and experienced respiratory failure. There was no explanation for her symptoms. On January 8, 2009, Miller was discharged from MedCentral.

{¶5} Instead of returning home after her discharge from the hospital, Miller was transferred to Winchester Terrace Nursing Home. The purpose of transferring Miller to Winchester Terrace was for rehabilitation physical and occupational therapy due to her lengthy hospital stay and to monitor her INR levels. INR diagnoses whether Miller is receiving therapeutic levels of Coumadin. MedCentral provided Winchester Terrace with Miller's discharge papers. The discharge papers included Miller's diagnoses of pulmonary emboli, DVT, and HIT. Miller was taking Coumadin at the time of her admission to Winchester Terrace.

{¶6} The medical director of Winchester Terrace is Defendant-Appellee/Cross-Appellant Dana Andrews, M.D. Dr. Andrews is employed by Defendant-Appellee/Cross-Appellant American Health Network of Ohio. Dr. Andrews is an internal medicine practitioner. In addition to being the medical director of

Winchester Terrace, Dr. Andrews has a private medical practice. He divides his time between overseeing the residents of Winchester Terrace and his private patients. The staff of Winchester Terrance includes registered nurses and licensed practical nurses. The nurses and support staff attend to the daily supervision and health needs of the residents. When Dr. Andrews is not present at the nursing home, the staff contacts Dr. Andrews by telephone or fax as to the care of the residents, such as medicine adjustments or issues with pain. Dr. Andrews conducts weekly rounds at Winchester Terrace and physically examines the residents under his care.

{¶7} When Miller was transferred to Winchester Terrace on January 8, 2009, Dr. Andrews was not present and he did not physically examine Miller. Dr. Andrews was provided with her discharge papers from MedCentral by the staff of Winchester Terrace. Upon Miller's admission, Winchester Terrace contacted Dr. Andrews to alert him that Miller's INR was low and not at therapeutic levels. An INR at subtheraputic levels could result in the reoccurrence of a DVT. Coumadin is a blood thinner medication; it is administered orally and takes a few days to take effect. Heparin and Lovenox are blood thinner medications and are administered subcutaneously. Heparin and Lovenox take immediate effect. In order to remedy her low INR, on January 9, 2009, Dr. Andrews ordered the administration of Lovenox as a bridge therapy until the Coumadin was at therapeutic levels. At that time he initially ordered the use of Lovenox, Dr. Andrews was not aware Miller was diagnosed with HIT by MedCentral.

{¶8} Miller began physical therapy at Winchester Terrace on January 9, 2009. Her physical therapy included walking therapy. According to the nursing records,

Miller began to complain of pain in her left leg. During the three nursing shifts, the nurses documented Miller's pain complaints and showed Miller's pain waxed and waned from severe pain to low pain. Leg pain is consistent with a DVT. Dr. Andrews initially prescribed the use of Tylenol to control Miller's pain. Dr. Andrews physically examined Miller on January 14, 2009. On January 17, 2009, Dr. Andrews prescribed Darvocet for Miller's leg pain. On January 19, 2009, Dr. Andrews prescribed a low dose Duragesic patch for Miller's leg pain. Dr. Andrews conducted a physical examination of Miller and saw that her left leg was swollen and tender. Dr. Andrews consulted with a local vascular surgeon for treatment recommendations for a patient experiencing pain with a DVT. Based on the recommendation, Dr. Andrews ordered the staff to wrap Miller's left leg with an ACE bandage, elevate the leg, and increase the pain medication.

{¶9} On January 22, 2009, during the shift of 11:00 p.m. to 7:00 a.m., a nurse failed to document her periodic checks of Miller's condition, including her left leg. During the same shift, the nurse made a progress note that Miller's left leg appeared edematous (swollen), discolored, and the foot was pale. At 8:00 a.m. on January 22, 2009, a nurse from Winchester Terrace contacted Dr. Andrews to advise him Miller's left foot was cold, purplish, and pulseless with no movement or sensation.

{¶10} Miller was transferred to MedCentral at 9:00 a.m. on January 22, 2009. Miller was taken by life flight to The Ohio State University Medical Center. On January 23, 2009, Miller's left leg was amputated above the knee. Pathologic examination of the leg tissue did not show any evidence of an arterial clot.

{¶11} On January 22, 2010, Miller filed a professional negligence action against Dr. Andrews and American Health Network of Ohio in the Richland County Court of Common Pleas. The matter went to trial by jury beginning April 5, 2012.

{¶12} At trial, Miller presented the expert testimony of Dr. Vogel, a hematologist; Dr. Shoag, an internist; and Dr. Collier, a vascular surgeon. The experts opined Miller suffered an ischemic event in her left leg caused by arterial thrombosis or massive venous occlusion. Miller's experts testified Dr. Andrews fell below the standard of care when he prescribed Lovenox to Miller based on MedCentral's diagnosis of HIT. Further, Dr. Andrews fell below the standard of care because Miller's worsening condition of her left leg should have caused Dr. Andrews to do a more intensive examination of the leg and have Miller evaluated by a hematologist or vascular surgeon. The experts testified that with the proper intervention, Miller's leg could have been saved.

{¶13} Dr. Andrews and American Health Network presented the expert testimony of Dr. Cefalu, a nursing home care expert; Dr. Balko, a pathologist; and Dr. Naslund, a vascular surgeon. The experts stated within a reasonable degree of medical certainty Dr. Andrews did not fall below the standard of care by prescribing Lovenox to Miller. Miller was not definitively diagnosed with HIT nor were Miller's symptoms consistent with HIT. Miller's symptoms were consistent with a DVT and Dr. Andrews treated her symptoms accordingly. Miller suffered a complication from a DVT, which resulted in the ischemic damage to her left leg. Finally, the experts testified that the nursing home staff failed to recognize the symptoms of an ischemic event and transmit the information to Dr. Andrews in a timely fashion.

{¶14} Based on the evidence presented, the jury found Dr. Andrews did not fall below the standard of care and was therefore not negligent in providing medical care to Miller.

{¶15} The trial court journalized the verdict on May 14, 2012. It is from this decision Miller now appeals.

### ASSIGNMENTS OF ERROR

{¶16} Miller raises six Assignments of Error:

{¶17} "I. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY REGARDING THE USE OF HINDSIGHT AND AFTER ACQUIRED INFORMATION IN DETERMINING WHETHER OR NOT THE DEFENDANT PHYSICIAN WAS NEGLIGENT.

{¶18} "II. THE TRIAL COURT ERRED IN SUBMITTING JURY INTERROGATORIES THAT WERE CONFUSING, MISLEADING AND INCONSISTENT WITH THE GENERAL JURY INSTRUCTIONS REGARDING THE STANDARD OF CARE.

{¶19} "III. THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT USE BY ANOTHER PHYSICIAN OF A DIFFERENT METHOD OF TREATMENT DOES NOT IN AND OF ITSELF PROVE NEGLIGENCE WHERE NO EVIDENCE OF SUCH DIFFERENT METHOD WAS PRESENTED.

{¶20} "IV. THE TRIAL COURT ERRED IN GIVING REPETITIVE JURY INSTRUCTIONS UPON THE ISSUE OF THE STANDARD OF CARE AND UPON THE SIGNIFICANCE THAT COULD BE ATTACHED TO A BAD RESULT.

{¶21} "V. THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR PARTIAL DIRECTED VERDICT AT THE CLOSE OF THE EVIDENCE AS TO THE AFFIRMATIVE DEFENSE ASSERTING NEGLIGENCE OF NURSING HOME EMPLOYEES AND BY SUBMITTING INSTRUCTIONS AND INTERROGATORIES TO THE JURY WITH REGARD THERETO.

{¶22} "VI. THE TRIAL COURT ERRED IN GIVING AN INSTRUCTION TO THE JURY WITH REGARD TO REMOTE CAUSE."

### *ANALYSIS*

#### *I.*

{¶23} Miller argues in her first Assignment of Error the trial court erred in overruling counsel's objection as to the inclusion of a jury instruction on hindsight in its standard of care instructions. The trial court gave a jury instruction entitled, "Standard of Care Not Determined by Hindsight or After Acquired Knowledge." The instruction read:

> In determining whether Dr. Andrews was negligent, you are to consider
>
> his conduct in light of all the facts before him under the same or similar
>
> circumstances. You must consider his care based on the then known
>
> facts and the existing state of medical knowledge at the time the events
>
> were occurring. You are not to evaluate his care based on after-acquired
>
> information.

(T. 1122).

{¶24} The jury instruction is not found in the Ohio Jury Instructions, but was developed by the Ohio State Bar Association. The OSBA Jury Instruction states:

In determining whether (defendant's name) was negligent, you are to consider (his, her, its, their) conduct in light of all of the facts before (him, her, it, them) under the same or similar circumstances. You are not to evaluate (his, her, its, their) care based on after acquired information, but you may consider (defendant's name) care based on the then known facts and the existing state of (medical, nursing, technical) knowledge at the time the events were occurring.

{¶25} The trial court has the duty to instruct the jury on the applicable law on all issues raised by the pleadings and evidence, and it must give jury instructions that correctly and completely state the law. *Pallini v. Dankowski*, 17 Ohio St.2d 51, 53, 245 N.E.2d 353 (1969); *Marshall v. Gibson*, 19 Ohio St.3d 10, 12, 482 N.E.2d 583 (1985); *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991); *Groob v. Keybank,* 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 32. A jury charge should be "a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall,* 19 Ohio St.3d at 12, 482 N.E.2d 583, citing *Parmlee v. Adolph*, 28 Ohio St. 10 (1875), paragraph two of the syllabus. Furthermore, "[a] charge ought not only be correct, but it should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury." *Id.,* citing *Aetna Ins. Co. v. Reed*, 33 Ohio St. 283, 295 (1877).

{¶26} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (1993). In order to find an abuse of

discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988). Whether the jury instructions correctly state the law is a question of law, which we review de novo. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶27} In arguing the use of the hindsight instruction was in error, Miller cites to this Court's decision in *Moore v. Alliance Obstetrics, Inc.*, 5th Dist. No. 2001CA00006, 2002-Ohio-1138. *Moore* was a medical negligence action alleging the physician failed to diagnose a pulmonary embolism suffered by the decedent after her hysterectomy. The trial court gave the jury following instruction:

> When examining the conduct of the defendant, with respect to the standard of care, the conduct or care should be judged prospectively, looking forward in time. The care and conduct of the defendant must be judged in light of the circumstances apparent to him at the time, and not by looking backward retrospectively.

*Id.* at *3.

{¶28} We found the jury instruction on hindsight to be ambiguous and confusing. We held:

> We find the jury instruction as given by the trial court in this case was ambiguous and confusing. The jury is told to judge appellee's conduct or care prospectively looking forwards in time [and] are then told to judge

appellee's care and conduct in light of the circumstances at that time, not retrospectively.  Notions of further, present, and past injury are all mentioned in the instruction.  The jurors are instructed to judge appellee's conduct and/or care "at the time" while "looking forward." They are told not to look back retrospectively when the standard contemplates retrospective, factual inquiry.  Though we believe we understand the intent of the instruction, we find a jury could easily be confused by it.  After reviewing the jury charge as a whole, we find the jury charge probably mislead the jury in a matter materially effecting appellant's substantial rights.

*Id.*

{¶29} Since our decision in *Moore*, this Court has affirmed the use of a hindsight jury instruction similar to that in the present case in *Thompson v. Capaldo*, 5th Dist. No. 08 CA 1, 2008-Ohio-6329.  In that case, the trial court instructed the jury:

In determining whether or not Dr. Capaldo is negligent, you are to consider his conduct in light of all the facts before him under the same or similar circumstances and not to evaluate his care based on after-acquired information.  You may consider Dr. Capaldo's care based on the then-known facts and the existing state of medical knowledge at the time the events were occurring.

*Id.* at ¶ 58.

{¶30} The Eighth and the Third appellate districts have reviewed the hindsight instruction or a conceptually similar hindsight instruction.  In *Holda v. Blankfield, M.D.*,

8th Dist. No. 84350, 2005-Ohio-766, the plaintiff's medical negligence action was based on the physicians' failure to diagnose the decedent's heart disease before she suffered a fatal cardiac arrest. The court analyzed the use of a hindsight jury instruction worded as follows:

> Next, in determining whether the physician was negligent, you should consider his care in light of all the attendant circumstances on the date and at the time of the alleged negligent event. You should not judge the physician by after-acquired knowledge or research.
>
> * * *
>
> The test of the existence of medical negligence is not hindsight, but one of foresight, considering all of the then-known facts and with the state of medical knowledge at the time the caregivers acted.

*Id.* at ¶ 38.

{¶31} The majority in *Holda* found *Moore* to be distinguishable and inapplicable to its case. *Id.* at ¶ 19. In a concurring opinion, Judge Gallagher expanded upon the majority analysis:

> Appellant asserts this instruction was defective because the "after acquired knowledge" clause was not supported by the evidence and the "hindsight" portion of the instruction inadequately expressed the law and was ambiguous, misleading, and confusing. I disagree.
>
> * * * where the record does not indicate that an "after acquired knowledge or research" clause was necessary, it cannot be said that the instruction was inherently prejudicial. The facts of the case presented to

the jury clearly defined the alleged errors of the treating physicians. These alleged errors were framed in the context of a treatment "time-line" and made it clear when the purported negligence occurred. The jury, for whatever reason, declined to find the physicians negligent.

* * *

It is also important to address appellant's reliance on the instruction given in *Moore v. Alliance Obstetrics, Inc.,* Stark App. No.2001 CA 00006, 2002-Ohio-1138, in comparison to the "hindsight" instruction given here. In *Moore,* the trial court gave the following instruction:

"When examining the conduct of the defendant, with respect to the standard of care, the conduct of care should be judged prospectively, looking forward in time. The care and conduct of the defendant must be judged in light of the circumstances apparent to him at the time, and not by looking backward retrospectively 'with the wisdom born of the event'. [sic] The standard is one of conduct, and not of consequence."

This instruction is distinguishable from the instruction given in the present case where the trial court clearly remarked "you should consider his care in light of all the attendant circumstances on the date and at the time of the alleged negligent event * * *." As the majority noted, this is an accurate statement of the law.

Lastly, appellant fails to support the assertion that the "hindsight" instruction was erroneous. "Actionable negligence does not consist of failing to take extraordinary measures which hindsight demonstrates

would have been helpful." *Bender v. First Church of the Nazarene* (1989), 59 Ohio App.3d 68, 69, 571 N.E.2d 475, quoting 70 O.Jur.3d (1986), Negligence, Section 9, at 46-47 (footnotes omitted).

"A hindsight charge instructs the jury on the distinction between foresight and hindsight, the former of which is the basis for a negligence claim. It instructs the jury that an after-the-fact assessment of facts or evidence cannot be the basis of a negligence claim so long as the initial assessment was made in accordance with the reasonable standards of medical care. In a medical malpractice case, a hindsight charge is authorized where the evidence raises an issue as to whether the negligence claim is based on later acquired knowledge or information not known or reasonably available to the defendant physician at the time the medical care was rendered." *Mercker v. Abend,* 260 Ga.App. 836, 839, 581 S.E.2d 351 (internal quotes and citations omitted).

The court in *Mercker* noted that the claims there were, like here, not based on "after acquired knowledge"; nevertheless, the court noted:

"In her appellate brief, Mercker argues that [her] claims against [Abend] were not based upon later acquired knowledge or information not known or reasonably available. But jury charges are not limited to a plaintiff's characterization of the lawsuit. A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, it is not error

for the court to charge the jury on the law related to that issue."   Id.

(Internal quote and citation omitted.)

\* \* \*

*Holda*, *supra* at ¶ 39 – 47.

{¶32} The Third District in *Clements v. Lima Memorial Hosp.*, 3rd Dist. No. 1-09-24, 2010-Ohio-602, *appeal not allowed*, 126 Ohio St.3d 1513, 2010-Ohio-3331, 930 N.E.2d 331, analyzed this jury instruction as to foreseeability:

Reasonable foreseeability of harm is an essential ingredient of negligence in the action brought against the defendants.  The test for foreseeability is not whether a defendant should have foreseen the injury exactly as it happened to the specific person.   The test is whether under all the circumstances a reasonably prudent person would have anticipated that injury was likely to result to someone from the act or failure to act.   The test, therefore, is one of foreseeability or foresight, not hindsight.

*Id.* at ¶ 74.

{¶33} The plaintiffs argued "foresight, not hindsight" was an inaccurate statement of law.  The court disagreed:

With respect to the Clements' issue with the phrase "foresight, not hindsight," we find that this was not an inaccurate statement regarding the law.   Even though this language is absent from the Ohio Jury Instructions (hereinafter "OJI"), the OJI instructions are only models or guidelines and are not mandatory.  *State v. Burchfield* (1993), 66 Ohio St.3d 261, 263, 611 N.E.2d 819.   With respect to foreseeability, the

question is one looking forward from the time of the purported negligent action (foresight), not looking back after the injury has occurred (hindsight). *Grabill v. Worthington Industries, Inc.* (1994), 98 Ohio App.3d 739, 744, 649 N.E.2d 874 ("[i]t is nearly always easy, after an [incident] has happened to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence.")  * * *

*Id.* at ¶ 75.

{¶34} As in *Holda*, we find the jury instruction in *Moore* to be distinguishable from that of the present case. We stated in *Moore* that while we understood the intent of the jury instruction, we found instructing the jurors to consider the past, present, and future in determining whether the physician was negligent was confusing and ambiguous. In the present case, the jurors were instructed to consider Dr. Andrews' conduct in light of the facts before a physician under same or similar circumstances. This is in accord with our decision in *Thompson*.

{¶35} The concept of same or similar circumstances underpins the hindsight theory. Information acquired after the negligent event is outside the framing of same or similar circumstances. In *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), at paragraph one of the syllabus, the Supreme Court of Ohio held:

In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do

some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.

*Bruni* supports the hindsight instruction.

{¶36} On review of the present case, we have examined the instructions as a whole, and we find that they are fairly balanced and include accurate statements of the law. Accordingly, we cannot find that the trial court abused its discretion in giving this instruction.

{¶37} Miller's first Assignment of Error is overruled.

*II.*

{¶38} Miller contends in her second Assignment of Error the trial court erred in submitting confusing interrogatories to the jury. We disagree.

{¶39} Counsel for Miller objected to Interrogatory No. 1 and No. 2 stating, "On the jury interrogatories, I'm going to object to No. 1 because it refers to the violation of being below the appropriate standard of care rather than just saying he was negligent, which is contrary to OJI." (T. 1146-1147). The trial court stated, "Well, just a second. They're the same thing." Counsel replied, "I understand they're the same thing." (T. 1147).

{¶40} Interrogatory No. 1 states, "Do you find by a preponderance of the evidence that Dana H. Andrews, M.D., provided care and treatment to Carol S. Miller that was below the appropriate standard of care? You will deliberate, and you will answer that first question. If you find that the conduct of the Defendant fell below the

medical standard required of him, you answer that question by checking yes. If you find that the conduct of the doctor met the standard of care required of him, you will answer that question no." (T. 1132). Interrogatory No. 2 read, "State in what respects you find that the Defendant Dana H. Andrews, M.D., provided care or treatment that was below the appropriate standard of care." (T. 1133).

{¶41} Civ. R. 49(B) governs the use of interrogatories and reads in relevant part: " * * * [t]he court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."

{¶42} The Supreme Court of Ohio, interpreting Civ. R. 49(B), has held that Civ.R. 49(B) "does not require the trial judge to act as a * * * mere conduit who must submit all interrogatories counsel may propose." *Ziegler v. Wendel Poultry Serv., Inc.*, 67 Ohio St.3d 10, 15, 615 N.E.2d 1022 (1993), citations omitted. "The court retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." *Id.* at 15.

{¶43} Reviewing the jury instructions and interrogatories as a whole, we find no error. The jury instructions sufficiently explain the appropriate standard of care in relation to negligence. The jury instructions stated in part:

This is a medical negligence claim brought by the Plaintiff, Mrs. Carol

Miller, to recover compensation for injuries claimed to have been caused

by the negligence of the Defendants, Dr. Andrews and American Health Network. The Plaintiff must prove by the greater weight of the evidence that the Defendant physician was negligent and that his negligence was the proximate cause of injury to the Plaintiff. A physician is negligent if the physician fails to meet the required standard of care.

* * *

If you find by the greater weight of the evidence that Dr. Andrews failed to meet the standard of care, then you shall find that he was negligent.

* * *

You shall decide whether the treatment used by the Defendant was in accordance with the required standard of care.

(T. 1119-1121).

{¶44} Miller's second Assignment of Error is overruled.

*III.*

{¶45} Miller argues in her third Assignment of Error the trial court erred in including the different methods jury instruction. The jury instruction stated:

Although some other physician might have used a method of treatment different from that used by the Defendant, this circumstance will not by itself prove that the Defendant was negligent. You shall decide whether the treatment used by the Defendant was in accordance with the required standard of care.

(T. 1121).

{¶46} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens,* 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist.1993). "The trial court retains discretion on how to conform the jury instructions to the evidence presented at trial." *State v. Condon,* 152 Ohio App.3d 629, 2003–Ohio–2335, 789 N.E.2d 696, ¶ 90 (1st Dist.), citing *State v. Guster,* 66 Ohio St.2d 266, 421 N.E.2d 157 (1981). In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Jury instructions must be reviewed as a whole. *State v. Coleman,* 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶47} The evidence in this case supports the inclusion of the different methods instruction. Plaintiff's expert, Dr. Vogel testified the use of Heparinoid drugs should not be used in a patient with HIT. Defendants' expert, Dr. Naslund testified that Lovenox was Dr. Andrews' best choice for Miller's anti-coagulation therapy in the nursing home setting.

{¶48} Miller's third Assignment of Error is overruled.

*IV.*

{¶49} Miller contends in her fourth Assignment of Error the jury instructions were duplicative as to the standard of care, causing prejudice to Miller.

{¶50} We stated in *Cole v. Beallor*, 5th Dist. No. 1999CA00080, 2000 WL 1687 (Dec. 30, 1999):

" * * * The mere fact that a legal proposition is repeated in an instruction is not ground for reversal, provided it is correct in itself, unless it appears that the party complaining was prejudiced thereby, or that such repetition was unnecessary and was made by way of emphasis or for the purpose of influencing the decision of the jury." *Billie v. Mutchler* (September 30, 1994), Columbiana App. No. 93-C-04, unreported, at 3, citing 89 Ohio Jurisprudence 3d 388-390, Trial, Sec. 308. The decision to repeat jury instructions is within the trial court's discretion. *State v. Carver* (1972), 350 Ohio St.2d 280, 289.

{¶51} Miller argues the trial court's use of the "bad results" and "guarantee" instructions together weighted the instructions, causing prejudice to Miller. The bad results instruction, found in OJI, read, "The fact that the doctor's treatment did not fulfill the patient's expectations does not by itself prove the doctor was negligent." (T. 1121). The guarantee instruction read, "A physician treating a patient in practicing his medical specialty is not a guarantee of favorable results. The mere fact that a bad result or an unexpected result or a disappointing result followed the treatment which the Defendant physician administered does not in itself form a basis for you to find that the Defendants failed in the duty they owed to this patient to exercise ordinary care in the practice of his medical specialty." (T. 1121-1122).

{¶52} In *Miller v. Defiance Regional Med. Ctr.*, 6th Dist. No. L-06-1111, 2007-Ohio-7101, the trial court used the same jury instructions in its medical negligence action. The Sixth District relied on *Callahan v. Akron Gen. Med. Ctr*, 9th Dist. No. Civ.A. 22387, 2005-Ohio-5103, to find that the trial court's instructions as a whole

were "fairly balanced" and included "accurate statements of the law." *Miller* at ¶ 51. The *Miller* court stated the appellant's heavily weighted argument implied bias on the part of the trial court. The court reviewed the jury instructions as a whole and found they were fair and accurate.

{¶53} Pursuant to *Miller* and *Callahan*, we have reviewed the jury instructions as a whole and we find them to be fair and accurate. There was no abuse of discretion by the trial court to include the instructions.

{¶54} Miller's fourth Assignment of Error is overruled.

*V.*

{¶55} In Miller's fifth Assignment of Error, she argues the trial court erred in denying her motion for directed verdict on the affirmative defense of negligence by non-parties raised by Dr. Andrews and American Health Network of Ohio. At the conclusion of the defendants' case, Miller moved for a partial directed verdict upon the "empty chair" affirmative defenses asserting negligence of non-parties. Miller argued defendants failed to present expert testimony that the non-parties fell below the standard of care. The trial court denied the motion for directed verdict as to the employees and agents of Winchester Terrace. The trial court instructed the jury in part:

> The Defendant Dana Andrews, M.D., claims negligence by other medical
> providers who rendered care to Carol Miller but who are not defendants
> in this case. If you find that Dr. Andrews was negligent and that such
> negligence proximately caused injury to Carol Miller, then your verdict
> must be for the Plaintiff and against Dr. Andrews. However, in that

event, you will also be asked to answer interrogatories, which I will further explain to you later, in determining whether any other medical provider about whom you have heard evidence was negligent and whether that negligence proximately caused or contributed to cause injury to Carol Miller.

(T. 1123).

{¶56} Interrogatory No. 5 asked the jury to determine whether the agents or employees of Winchester Terrace provided care or treatment below the standard of care. (T. 1134).

{¶57} Interrogatory No. 1 asked the jury if they found by the preponderance of the evidence that Dr. Andrews provided care or treatment to Miller that was below the appropriate standard of care. If the answer of six or more jurors was no, the jurors were instructed to sign the general verdict form in favor of Dr. Andrews and proceed no further. (T. 1132-1133). The jury answered "no" to Interrogatory No. 1. The jury signed the general verdict form in favor of Dr. Andrews and American Health Network of Ohio. (T. 1149).

{¶58} An error in a charge or an error in charging, however, " * * * may not always work to the prejudice of a party in the case * * *." *Dunn v. Higgins*, 14 Ohio St. 2d 239, 246, 237 N.E.2d 386 (1968); and, when special interrogatories are submitted to a jury, the answers " * * * are to be relied upon to determine whether substantial justice has been afforded in a particular case * * *." *Id.,* at 246. An error in charging on contributory negligence, comparative negligence or assumption of risk is not prejudicial when the jury answers "no" to the first interrogatory asking whether the

defendant is negligent. *Sech v. Rogers*, 6 Ohio St. 3d 462, 466, 453 N.E.2d 705 (1983). In such case, the inquiry into whether it was error for the trial court to have so charged is immaterial and moot since a finding that defendant is not negligent obviates " * * * the need for the jury to address the affirmative defenses * * *." *Johnson v. Toledo Cardiology Assoc., Inc.*, 6th Dist. No. L-89-292, 1991 WL 43064 (Mar. 29, 1991), *2 citing *Sech v. Rogers, supra,* at 466; *Wagner v. Ohio Bldg. Restoration*, 6th Dist. No. L-84-394, 1985 WL 7586, (Aug. 30, 1985).

{¶59} We therefore find any error asserted by Miller is harmless based on the jury's verdict finding Dr. Andrews and American Health Network of Ohio not negligent.

{¶60} Miller's fifth Assignment of Error is overruled.

*VI.*

{¶61} Miller argues in her sixth Assignment of Error the trial court erred in instructing the jury on remote cause. We disagree.

{¶62} The jury instructions stated, "A person is not responsible for injury to another if his or her negligence is a remote cause and not a proximate cause. A cause is remote when the result could not have been reasonably foreseen or anticipated as being the natural or probable cause of injury." (T. 1119).

{¶63} Miller argues the language of the last sentence is nonsensical. Miller does not in her appellate brief point to the record where counsel objected to the instruction. Further, based on the reasoning in the fifth Assignment of Error, we find any error to be harmless because the jury did not reach the issue of proximate cause based on its finding that Dr. Andrews did not fall below the standard of care.

{¶64} Miller's sixth Assignment of Error is overruled.

**CROSS-APPEAL OF DEFENDANTS-APPELLEES DANA ANDREWS, M.D. AND**

**AMERICAN HEALTH NETWORK OF OHIO**

*FACTS AND PROCEDURAL HISTORY*

{¶65} The deposition of defense expert Mathew Lee, M.D. was scheduled for February 23, 2012 in Richmond, Virginia. Plaintiff's counsel traveled to Richmond on February 22, 2012. The deposition began on February 23, 2012 at 10:20 a.m. and went until 11:45 a.m. The deposition adjourned at 11:45 a.m. under plaintiff counsel's objection due to defense counsel's flight arrangements.

{¶66} On March 5, 2012, Miller filed a motion in limine for sanctions or for an order compelling discovery with regard to a deposition of Dr. Lee. In her motion, Miller requested attorneys fees and costs associated with the February 23, 2012 deposition.

{¶67} A video conference deposition was held with Dr. Lee on March 13, 2012.

{¶68} Dr. Lee did not testify at trial.

{¶69} The trial court did not hold an oral hearing on the motion for sanctions. On May 14, 2012, in its judgment entry journalizing the jury verdict, the trial court ordered sanctions against defendants in the amount of $5,235.37 for expenses related to the termination of Dr. Lee's deposition.

{¶70} It is from this decision Dr. Andrews and American Health Network of Ohio appeal.

*ASSIGNMENT OF ERROR*

{¶71} Dr. Andrews and American Health Network of Ohio raise one Assignment of Error in their Cross-Appeal:

{¶72} "THE TRIAL COURT FAILED TO COMPLY WITH THE REQUIREMENTS OF R.C. 2323.51 AND ABUSED ITS DISCRETION IN ORDERING THE DEFENDANTS TO PAY SANCTIONS IN THE FORM OF COSTS RELATED TO THE DEPOSITION OF DEFENSE EXPERT MATTHEW LEE, M.D."

### *ANALYSIS*

{¶73} The trial court awarded sanctions to Miller under R.C. 2323.51(A)(2)(i). The statute defines frivolous conduct under this subsection as conduct that, "* * * obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation."

{¶74} R.C. 2323.51 provides that a trial court may award court costs, reasonable attorney fees, and other reasonable expenses incurred in connection with the civil action or appeal to any party to the civil action or appeal who was adversely affected by frivolous conduct. *Huntsman. v. Lowery,* 5th Dist. No.2003CA00210, 2004–Ohio–753, ¶ 11.

{¶75} In order to award sanctions, R.C. 2323.51(B)(2)(a) requires a trial court to set a date for a hearing to determine whether the conduct was frivolous and whether the frivolous conduct adversely affected a party to the action. The trial court must provide notice of the hearing to each party or counsel of record who allegedly engaged in the frivolous conduct and to any party who was allegedly adversely affected by the frivolous conduct. R.C. 2323.51(B)(2)(b). The trial court must then conduct a hearing at which the court "allows the parties and counsel of record involved to present any relevant evidence, including evidence of reasonable attorney's fees.

R.C. 2323.51(B)(2)(c) and 2323.51(B)(5)(a). *See Hunt v. Allen*, 5th Dist. No. 11-CA-70, 2012-Ohio-1212, ¶ 31.

{¶76} In this case, the trial court did not comply with R.C. 2323.51(B)(2). Accordingly, the portion of the May 14, 2012 judgment entry awarding sanctions in favor of Miller is reversed and the cause remanded for further proceedings consistent with R.C. 2323.51.

{¶77} The sole Assignment of Error of Dr. Andrews and American Health Network of Ohio is sustained.

## CONCLUSION

{¶78} The six Assignments of Error of Plaintiff-Appellant/Cross-Appellee Carol S. Miller are overruled.

{¶79} The May 14, 2012 judgment entry of the Richland County Court of Common Pleas journalizing the general verdict in favor of Defendants-Appellees/Cross-Appellants Dana H. Andrews, M.D. and American Health Network of Ohio is affirmed.

{¶80} The sole Assignment of Error of Defendants-Appellees/Cross-Appellants Dana H. Andrews, M.D. and American Health Network of Ohio is sustained. The May 14, 2012 judgment entry as to sanctions against Defendants-Appellees/Cross-Appellants only is reversed and the matter remanded for further proceedings consistent with R.C. 2323.51.

By: Delaney, P.J.

Gwin, J. and

Wise, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. JOHN W. WISE

PAD:kgb/PM