MURPHY, APPELLANT, *v.* CARROLLTON MANUFACTURING
COMPANY; MAYFIELD ET AL., APPELLEES.

[Cite as *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585.]

(No. 90–1437—Submitted May 8, 1990—Decided August 28, 1991.)

*Zwick Law Offices Co., L.P.A., Arthur C. Graves* and *Leander P. Zwick III,* for appellant.

*Lee I. Fisher,* Attorney General, *Michale L. Squillace* and *Cheryl J. Nester,* for appellees Industrial Commission of Ohio, and Administrator, Bureau of Workers' Compensation.

ALICE ROBIE RESNICK, J.   Appellant's complaint demanded that she be entitled to participate in the Workers' Compensation Fund and receive death benefits due to her husband's death.   We have stated that in order for dependents of deceased workers to participate in the Workers' Compensation Fund and collect death benefits, " * * * the proof offered must show such injury was a proximate cause of death * * *." *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 28 O.O. 50, 53 N.E.2d 1018, at the syllabus. Moreover, we have adhered to the proposition that when " * * * considering the issue of proximate cause in the workers' compensation context, * * * the definition of and principles governing * * * the determination of 'proximate cause' in the field of torts are applicable." *Oswald v. Connor* (1985), 16 Ohio St.3d 38, 42, 16 OBR 520, 523, 476 N.E.2d 658, 662, citing *Aiken, supra.*

It is a well-established principle of tort law that an injury may have more than one proximate cause.   See Prosser and Keeton, Law of Torts (5 Ed.1984) 266–268, Section 41; 2 Restatement of the Law 2d, Torts (1965) 432, Section 433; 1B Larson, Law of Workers' Compensation (1991) 7–612 to 7–941, Section

41.64; 1 Ohio Jury Instructions (1988) 183, Section 11.10 ("There may be more than one proximate cause."). Ohio case law also supports this fundamental tenet of tort law: "In Ohio, when two factors combine to produce damage or illness, each is a proximate cause." *Norris v. Babcock & Wilcox Co.* (1988), 48 Ohio App.3d 66, 67, 548 N.E.2d 304, 305.

Hence, the issue presented for this court's determination is whether appellant presented sufficient evidence to be entitled to a jury instruction on dual causation. The appellate court opined that " * * * the evidence presented by the appellant in this case indicated there was only a single cause." We disagree.

At trial, appellant produced expert opinion testimony by two doctors as to the decedent's cause of death. Dr. Pliny A. Price testified as follows:

"Q: * * * Now, doctor, * * * do you have an opinion to a reasonable degree of medical certainty and probability as to whether or not the injury he [decedent] sustained on October 23, 1964 directly and proximately hastened his death on May 20th [*sic*], 1983 by a substantial period of time? * * *

" * * *

"A: My opinion is that the injury described in October of 1964 and subsequent events which followed as revealed by all of the medical records of hospitalizations, et cetera, that this patient's death was hastened by a substantial margin by the injury of October 23rd, '64, and the events that followed.

"Q: And, doctor, could you give us a basis for your opinion?

"A: In my opinion the way the thing stacks up is this, that the injury in which the patient sustained a fractured coccyx and a lumbar sprain, et cetera, and contused hip, created a situation that put stress on the patient. Prior to this he was able to adjust to his job and taking care of his family, and that was solid as far as he was concerned. With the advent of new problems, new stresses, the patient began to give way under this, and this eventually developed into a vicious cycle with pain, medications, increase of nervous tension and in turn nervous tension increasing the muscle spasms and stress on the lower back, and the stress on the stomach and lower bowel to the extent that he developed peptic ulcers, evidently both in the stomach and duodenum. So that later there was hemorrhage from these. This was a sustained stress that developed new facets as it went along and got deeper and deeper before the patient finally with his depression had obviously given up ever going back to work or taking care of his family. And according to the death certificate the patient died from renal failure with myocardial infarction, and certainly these types of major stresses did exert considerable influence on

worsening his cardiac and renal conditions and did hasten his death in my opinion by several years."

The second doctor to provide expert medical opinion for appellant was Dr. Alan E. Kravitz. After appellant's counsel established that Dr. Kravitz had reviewed the decedent's medical records and other pertinent hospitalization documents, the witness related his opinion as follows:

"A: And, Doctor, what is your opinion?

"Q: I believe the injury of October 23rd, 1964 directly and proximately caused his death.

"Q: And, Doctor, would you give us the basis of your opinion?

"A: For the purposes of the attorneys and more for the purposes of the jury, I am going to describe a sequence of events that are inexorably chained or linked together.

"This gentleman was injured in October of 1964 and was treated as an outpatient. He—at age 41. He was admitted to Aultman Hospital the following February, February of '65, excuse me, for evaluation of lumbosacral strain, and these are comments throughout these records of recurrent episodes of pain.

"He was treated medically, but the following year in March of 1966 required surgical treatment, and in fact, he had a spinal fusion of L5–S1.

"Nonetheless, he required pain medications and recurrent—had had recurrent episodes of pain and was readmitted just eight months following, in November of 1966 to Aultman Hospital, again with pains in the back and the left posterior thigh.

"In March of 1968 he again had intractable pain, requiring further potent pain medications, and was readmitted to Aultman, where he had a second surgery.

"Needless to say, it is unusual to have two surgeries in such—two back surgeries in such a short period of time.

" * * *

"He was discharged on medications, but was readmitted in May of 1969 and had a third lumbar fusion.

"In this record of this hospitalization is this chronic and long-standing pain which appeared to be refractory to now three surgical interventions; and at this point in time because of the pain medications, the drugs and because of the chronic pain, a psychiatric consultation was had.

"Sometime after about March of 1981 he fell and fractured his hip and was treated at the Ohio Valley Hospital and had a replacement of his hip.

"I just wish to point out that * * * again in this chain and link scenario that I have set forth, that the treatment that the previous doctors had given him following the multiple surgeries had now resulted in another problem.

"Furthermore, the following year in January of 1982 Mr. Murphy has a gastrointestinal bleed. This is also a risk, a known risk of the treatment with high-dose corticosteroids and other analgesics such as aspirin derivatives, or Anacin in this case. This would be 18 years—nearly 18 years since his initial injury from the time that he had been taking medications.

" * * *

"Finally, * * * I want to point out to you that over a period of 19 years it appears that most of this gentleman's life was spent in bed, particularly after the time is clear when he absolutely stopped working. Clearly after his laminectomies, after his hip replacement and for sure following his gastric resection he spent a good deal of time, if not all of the time in bed.

"This causes—this lack of activity causes the blood to pool in certain places and causes an increased propensity to pulmonary thromboembolism, and the risk—these risks are absolutely clear.

"Indeed, if Mr. Murphy had had a hip replacement in this area, * * * where I am most familiar, a cardiologist or internist or a physician like me would be called in to recommend anticoagulant therapy to thin his blood out.

"Now, Mr. Murphy at the time of his hip replacement was not a good candidate for any cholesterol therapy because of his recurrent GI bleeds.

"So it just seems to me that there is an indisputable link of how the injury directly and proximately caused his death, which occurred at his last hospitalization, in my opinion, from a massive pulmonary embolism."

From the above testimony, it is clear that appellant produced sufficient medical expert testimony to warrant a jury instruction as to dual causation. Dr. Price testified that in his opinion the decedent's death was substantially hastened by the injury of October 23, 1964. Dr. Kravitz stated that he believed that the decedent's death was directly and proximately caused by the October, 1964 injury. While appellees produced the testimony of three medical doctors whose opinions as to proximate cause differed from that of Drs. Price and Kravitz, we will not, and indeed cannot, proceed to determine the issue of proximate cause. That is a factual question to be resolved by the factfinder. The sole question for this court's determination is whether appel-

lant produced sufficient evidence to warrant a jury instruction on dual causation.[2] We find that she has.

It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135. However, the corollary of this maxim is also true.[3] "Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. See, also, *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 57 O.O.2d 213, 275 N.E.2d 340, at the syllabus: "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction."

Therefore, we hold that where a dependent person claiming death benefits under the workers' compensation laws produces sufficient evidence to allow reasonable minds to conclude that there was more than one proximate cause of death, a jury instruction on dual causation should be given. In the present case, appellant has satisfied this burden, and the requested instruction contained a correct statement of the law applicable to the evidence adduced at trial. We hereby reverse the court of appeals and remand this case to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, HARSHA, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

MOYER, C.J., dissents.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting for HOLMES, J.

---

2. Although we are not called upon to review the record to determine if there is evidence to support a finding of proximate cause, we are aware of our prior acknowledgement in *Oswald, supra:* "* * * [J]ust as this court will not allow the existence of the causal relationship between the occupational disease [or injury] and accelerated death to be proved by use of mere magic words * * *, it will correspondingly not require these magic words in order to find such causation." *Id.* 16 Ohio St.3d at 42, 16 OBR at 523–524, 476 N.E.2d at 663.

3. "The fundamental rule for determining the scope of the instruction to be given by the court is that it should be adapted to and embrace all issues made by the pleadings and the evidence. * * * The instruction should be broad enough to properly cover the issues presented for consideration, or all the facts in issue which the evidence tends to establish or disprove." (Footnotes omitted.) 89 Ohio Jurisprudence 3d (1989) 354–355, Trial, Section 289.