JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Pridemark Homes, Inc. appeals from the jury verdict in favor of plaintiff-appellee Russell J. Pierce in his personal injury action.
 {¶ 2} Appellant argues the trial court gave improper instructions to the jury with regard to appellee's status as a subcontracted employee in relation to appellant's property. Appellant further argues the jury's verdict is not sustained by the weight of the evidence. Since, however, a review of the record renders appellant's arguments unpersuasive, the verdict is affirmed.
 {¶ 3} Appellee's action against appellant results from appellant's ownership of a construction site in 1996. Appellant, a builder of private homes and a company which was owned and operated by its president, Dennis Totarella, had purchased a number of empty lots in the city of Solon, Ohio. One of these lots was located at 35715 Michael Drive.
 {¶ 4} Appellant began construction of a private home on the lot in the spring of that year. In order to begin building, appellant was required to sign an agreement with the city. Pursuant to the terms of this agreement, appellant promised to abide by the applicable city ordinances. City of Solon Codified Ordinance Section ("SCOS") 660.09(a) contained the following prohibition:
 {¶ 5} "No person shall abandon or knowingly permit to remain on public or private property any open cellar, ditch, excavation, well, cesspool, or structure which is in the process of construction, * * * unless the same is adequately protected by suitable barricades and guarded by warning devices* * * so that the condition will not reasonably prove dangerous to life or limb. Such guard* * * shall be so maintained that persons* * * shall be protected against falling into such excavations."
 {¶ 6} Appellant subcontracted all of the work; thus, first, Louis Severino's construction company excavated the foundation, and placed the storm sewer and the sanitary sewer pipelines. Another company laid the foundation for the house. Appellant began work constructing other houses on Michael Drive at about the same time, therefore, Totarella often viewed the site over the course of the construction.
 {¶ 7} Upon the completion of the foundation at 35717 Michael Drive, Severino returned to install the downspouts and to backfill around the house. The city inspection record of each phase of the project indicates the inspection of the downspouts took place on April 24, 1996. Severino did the backfill later that same day.
 {¶ 8} The construction and completion of the house itself proceeded over the ensuing months. In May and June 1996, underground utility lines for the home were excavated and placed by Ohio Trenching Inc., and connected by Wartko Construction Company. For the natural gas line, the subcontractors were required to leave open an "inspection hole" near the foundation and near the street in order that the city could determine the "tie-in" properly had been made. Totarella did not oversee such matters, but, rather, left them to the subcontractors to complete. Subsequently, Severino completed the "rough grade" of the lot.
 {¶ 9} By November 4, 1996, a city inspector had examined the wiring that had been installed in the home and notified appellant three heating violations needed to be corrected. The record reflects appellant had corrected these violations by the time of the next inspection, which took place, as usual for such projects, ten days later, on November 14, 1996. Thus, workers had been present on the premises during this time period.
 {¶ 10} During the day of November 12, 1996 and into the night, the Solon area received its first significant snowfall of the winter season. Nearly a foot of snow fell. On the morning of November 13, 1996, as the snowfall was tapering off, appellee arrived on the property.
 {¶ 11} Appellee was a young man employed by the East Ohio Gas Company, which Totarella had requested to install the natural gas meter for the home. As appellee drove toward the property in his truck, he noticed a yellow tape had been placed across the base of its driveway. Since he interpreted the tape to mean the driveway should not be used, appellee parked on the street. He noticed the home and the property had the appearance that they nearly were ready for sale.
 {¶ 12} Appellee then followed his normal procedure. At the cargo area of his truck, he assembled the necessary fittings on the appropriate, weighty gas meter, placed two long metal wrenches in each of his rear pants pockets, "grabbed [his] gas track and [the] meter, and started to walk up to the house." Appellee proceeded across the featureless, snow-covered front landscape rather than attempting to use the barred driveway. He had walked approximately twenty feet into the lot when "the ground gave way" beneath him.
 {¶ 13} Although appellee attempted to maintain his balance, he was unable to do so because a hole had opened in the snow below his feet. He fell backward into it, with his arms and legs toward the sky, jamming the wrenches into his back as he struck the bottom of the hole. Appellee felt as if he had been slammed in the back "with a baseball bat;" he later discovered his skin bore a permanent hematoma where one of the wrenches had been forced into it.
 {¶ 14} Appellee extricated himself from the hole and sat at its edge for a few moments to recover. He noticed it appeared to be "cylindrical" and had a depth of approximately two feet under the twelve-inch cover of snow. After telephoning his supervisor to inform him of the incident, and although "sore," appellee completed the gas meter installation before leaving the premises.
 {¶ 15} The soreness increased as appellee went through his work day; appellee compared the pain to "somebody jamming an ice pick" into his back, with additional sharp pain radiating into the back of his leg if he "bent the wrong way." Appellee's complaint about its severity prompted his supervisor to request him to complete an incident report and then to obtain medical treatment. Appellee complied; later that same day, his employer sent someone to the property to take photographs of the site where the incident occurred.
 {¶ 16} Appellee subsequently discovered the injuries he had sustained in the fall were extensive and permanent. He was informed they included an "encapsulated hematoma," a "deep ligamentous derangement" in the lumbar area of his spine, and, despite numerous forms of medical therapy as time progressed, spinal disc herniation. Appellee eventually filed this personal injury action against appellant and several of appellant's subcontractors, seeking compensation for his injuries.
 {¶ 17} Two of the defendants had obtained summary judgment in their favor before appellee's case proceeded to a jury trial against only appellant and Ohio Trenching. Following appellee's presentation of his case, the trial court granted Ohio Trenching's motion for a directed verdict. The jury ultimately rendered a verdict in appellee's favor against appellant in the amount of $228,000 in compensatory damages and $400,000 in future damages.
 {¶ 18} Appellant's appeal of the jury's verdict presents this court with the following three assignments of error for review:
 {¶ 19} "1. Whether the trial court erred by failing to properly instruct the jury on the standard of care owed to an employee of an independent contractor by a general contractor as requested by Defendant, which failure materially prejudiced Defendant.
 {¶ 20} "2. Whether the trial court erred by instructing the jury on negligence per se with respect to Solon Ordinance [Section] 660.09, which error materially prejudiced Defendant.
 {¶ 21} "3. Whether the verdict in (sic) against the manifest weight of the evidence."
 {¶ 22} Appellant's first and second assignments of error challenge the trial court's instructions to the jury at the close of the evidence.
 {¶ 23} Appellant initially argues the trial court improperly refused to give a special instruction appellant had requested. Appellant's "Proposed Jury Instruction No. 19" stated as follows:
 {¶ 24} "NO DUTY OWED
 {¶ 25} "A construction site is an inherently dangerous setting. A subcontractor working at a construction site is engaged in inherently dangerous work.
 {¶ 26} "I hereby instruct you that if the Defendant, as contractors and owners (sic), did not actively participate in the subcontractor[']s work, then they (sic) are not liable as a matter of law and you shall find for Defendant.
 {¶ 27} "Active participation means that the general contractor directed the specific activity which resulted in the injury, rather than merely exercising a general supervisory role."
 {¶ 28} In making its argument, appellant acknowledges the trial court is required to charge the jury with instructions that are both a correct and a complete statement of the law that is applicable to the facts of the case. Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585,591. Appellant contends the facts of this case came within the "independent contractor exception" to the duty of care owed by an owner of property to an invitee. This court disagrees.
 {¶ 29} The Fifth District Court of Appeals recently faced the same argument in Dramble v. Lawrence Building Corp., Stark App. Nos. 2001CA00332, 2001CA00337, 2002-Ohio-4752. Therein, the appellate court made the following persuasive analysis of the issue:
 {¶ 30} "[*P28]* * * [Appellant] argues that the [Supreme] Court established a bright-line rule that any work being performed by a subcontractor's employee on a construction site is inherently dangerous. * * *
 {¶ 31} "[P29]While we acknowledge that the Ohio Supreme Court* * * found that a construction site is inherently dangerous, [it] continued to indicate that in order for [the] `no-duty' rule to apply, the independent contractor had to be performing `an inherently dangerous task.' * * *
 {¶ 32} "[P31]We find that there remains a requirement that the task being conducted had an element of real or potential danger or that the risk faced was inherent to a construction site so that the independent contractor actually or constructively knew of and appreciated the risk but proceeded despite the danger. In this case, * * * [P32][a]ppellee was simply going down a set of stairs in a condominium that was nearly completed."
 {¶ 33} As in Dramble, appellee in this case had not yet begun his work but simply was on his way. He was entering the premises of what appeared to be nearly-completed construction. There is no risk "normally to be expected in the ordinary course of the usual or prescribed way of" crossing a heavily snow-covered front yard.Rodic v. Koba (Dec. 7, 2000), Cuyahoga App. No. 77559.
 {¶ 34} Under these circumstances, the trial court properly refused to accept appellant's proposed jury instruction, because it did not correctly state the law applicable to the case. Dramble, supra, at P42.
 {¶ 35} Appellant next argues that the trial court instructed the jury that a violation of SCOS 660.09(a) constituted "negligence per se," which was inappropriate. After a review of the record, however, this court cannot agree with appellant's argument.
 {¶ 36} The trial court instructed the jury in this case that "the specific law that applie[d] in this case* * * [was] Ordinance 660.09." The trial court stated the words of the ordinance, and defined some of its pertinent terms before informing the jury as follows:
 {¶ 37} "[K]nowledge is determined from all the facts and circumstances in evidence. You will determine, from all of those facts and circumstances, whether there existed in the mind of the Defendant, Mr. Totarella, the president of Pridemark, an awareness of the probability that at the time of the Plaintiff's injury an open, hole, excavation, what have you, existed on the premises, not protected by barricades and warning devices.
 {¶ 38} "* * * The Plaintiff must prove, by the preponderance of the evidence, that his injuries were proximately caused by a negligent act or failure to act of the Defendant, while Plaintiff was on the premises.
 {¶ 39} "* * * Plaintiff must prove by the greater weight of the evidence that his injuries were proximately caused by an unsafe condition on the premises, caused by the failure of the Defendant to use ordinary care, or* * * the Defendant failed to use ordinary care to correct it or to provide notice of the condition, or, * * * that in using ordinary care, the Defendant should have discovered the condition and used ordinary care, either to correct it or to give notice of the condition."
 {¶ 40} The trial court defined the legal term "ordinary care" before stating that a person "may be required by law, to do something," and appellant's "[f]ailure to do what [was] required by law [was] negligence."
 {¶ 41} Thus taken in complete context, the foregoing did not instruct the jury that appellant's conduct in this case constituted "negligence per se." Swoboda v. Brown (1935) 129 Ohio St. 512, paragraph four of the syllabus; cf., Becker v. Schaull (1991), 62 Ohio St.3d 480;Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367. The trial court did not tell the jury that the only fact for its determination was appellant's omission of the specific act required by the ordinance, but rather that it must find appellant was negligent from all the facts, conditions and circumstances disclosed by the evidence.
 {¶ 42} In order to constitute an instruction that appellant's omission was negligence per se, the trial court must have given an instruction that a "violator of such specific requirement of law [was] liable irrespective of the question as to whether his act is such as is deemed to meet and satisfy the test of ordinary or reasonable care * * *." Id., at 373-374. Where, however, the jury is left to determine reasonableness under the proven conditions and circumstances, "the phrase negligence per se has no application." Id., at 374.
 {¶ 43} Since the trial court did not instruct the jury that violation of SCOS 660.09(a) constituted negligence per se, appellant's argument with respect to its second assignment of error fails.
 {¶ 44} Accordingly, appellant's first two assignments of error are overruled.
 {¶ 45} In its third assignment of error, appellant argues the jury's verdict is not sustained by the weight of the evidence. A review of the record renders appellant's argument unpersuasive.
 {¶ 46} An appellate court must not substitute a different judgment for that of the trier-of-fact where there exists some competent and credible evidence supporting its decision. Myers v. Garson,66 Ohio St.3d 610, 1993-Ohio-9. This court is mindful that the trier-of-fact's assessment of the credibility of the witnesses is given deference. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 47} In this case, appellee testified the yellow caution tape led him to conclude the driveway apparently was better avoided, so he proceeded over what appeared to be a safer alternative to reach his destination: an unbroken expanse of graded front yard. His testimony was corroborated by the photographs taken later that same day by his employer.
 {¶ 48} Totarella, on the other hand, indicated he often visited the construction sites, and admitted he had been working on a house directly across the street just prior to the incident. He further indicated he did not consider work left by his subcontractors to be his responsibility, but rather simply called them to either complete or remedy the situation. From this evidence, the jury properly could conclude Totarella was aware of the hole, but did nothing about it.
 {¶ 49} Consequently, the jury's verdict is supported by the weight of the evidence. Appellant's third assignment of error, accordingly, also is overruled.
 {¶ 50} The jury's verdict in appellee's favor is affirmed.
ANN DYKE, J. and COLLEEN CONWAY COONEY, J. concur.