[Cite as *Williams v. Chrysler First Fin. Servs. Co.*, 2017-Ohio-7778.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Charmalita S. Williams

Appellant

v.

Chrysler First Financial Services Co.
and Sarah D. Morrison, Administrator,
Bureau of Workers' Compensation

Appellee

Court of Appeals No. L-17-1009

Trial Court No. CI0201504325

**DECISION AND JUDGMENT**

Decided: September 22, 2017

* * * * *

Theodore A. Bowman, for appellant.

Thomas J. Gibney and Melissa M. VanGessel, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} In this administrative appeal, the plaintiff-appellant, Charmalita Williams, appeals a judgment following a jury verdict that disallowed her workers' compensation claim for a right shoulder injury. For the reasons that follow, we affirm the judgment.

**Facts and Procedural History**

{¶ 2} In October 2014, Williams began work as a production operator for FCA US LLC (hereinafter "Chrysler") at the company's Jeep assembly plant in Toledo, Ohio. Her job duties required her to perform repetitive overhead work, specifically the repeated use of a mallet to install vehicle door pads.

{¶ 3} Williams began experiencing right shoulder pain in December 2014—approximately five weeks into her job assignment. Williams sought medical treatment in the plant medical dispensary and then she consulted her own physician, Dr. David Sohn. Williams was diagnosed with a full thickness tear in her right rotator cuff, which is a group of muscles that surround the right shoulder joint.

{¶ 4} On December 10, 2014, Williams filed a claim for workers' compensation benefits, requesting that it be allowed for "full thickness tear right rotator cuff." Williams alleged that she sustained this injury due to "constant use of shoulder going up and down to put rubber on door edges."

{¶ 5} Following two administrative hearings, the Industrial Commission of Ohio ultimately disallowed the claim, finding that the muscle tear "primarily resulted from the natural deterioration of the tissues in Ms. Williams [sic] right shoulder" rather than work activity. Pursuant to R.C. 4123.512, Williams timely appealed that decision to the Lucas County Court of Common Pleas, and a jury trial took place on November 14 and 15, 2016.

2.

{¶ 6} At trial, the parties each presented a medical expert witness on the issue of causation:  Williams presented the expert testimony of her treating physician, Dr. Sohn, and Chrysler presented the expert testimony of Dr. Douglas Gula, an orthopedic surgeon who had performed an independent medical examination of Williams during the course of the proceedings.  The experts agreed on several issues.

{¶ 7} Dr. Sohn and Dr. Gula agreed that, at the time of her injury, Williams had three separate, non-work related conditions in her right shoulder.  First, Williams was born with a "Type II acromion."  The acromion is a bony structure attached to the scapula, or shoulder blade.  A "Type II acromion" does not lay flat but, rather, is curved or hook shaped.   Second, Williams has a bone spur, i.e. an outgrowth, on her acromion.  Third, Williams has "AC joint arthritis," which is a degenerative condition of the AC joint at the top of the shoulder.   The experts agreed that these three conditions preexisted Williams' rotator cuff tear.

{¶ 8} Dr. Sohn and Dr. Gula also agreed that Williams did, in fact, suffer a full thickness tear in her right rotator cuff.  The experts disagreed as to the cause of that injury.

{¶ 9} Williams' expert, Dr. Sohn, testified that there are three potential causes of a rotator cuff tear:  (1) "acute trauma," which he described as some violent episode where the tendon is forcefully torn, like a car accident; (2) "attritional," which he said is a gradual occurrence over time as a person's blood supply to the muscle naturally decreases with age; or (3) "overuse mechanism," which he described as overuse of a

3.

repetitive movement involving the ball and socket joint of the shoulder, such as repetitive arm movement.  When asked to give his opinion on the cause of Williams' rotator cuff tear, he testified:

> I think she had an overuse mechanism.  I think that she had some - - she had the Type II acromion and she had some arthritis of the AC joint that were risk factors that combined with the repetitive overhead activity that she described, I think, is what caused her rotator cuff tear.  So I do think that that was a direct and proximate injury.

{¶ 10} Dr. Gula, on the other hand, opined that Williams' rotator cuff tear was a "longstanding chronic condition that didn't happen in December 2014."  He stated that her rotator cuff tear took "years to develop" and occurred due to "activities of daily living" rather than her work activities.  Dr. Gula also recognized that neither a Type II acromion nor AC joint arthritis are capable of causing a rotator cuff tear on their own but, rather, these conditions are predisposing risk factors that can contribute to the development of a tear.  Specifically, he testified:

> Q:  Now you mentioned that Ms. Williams had a Type II acromion which I think you said is – is something that she was born with.  Does everyone who has a Type II acromion develop a rotator cuff tear?
>
> A:  No.
>
> Q:  Well, what about AC joint arthritis – Can you have AC joint arthritis and not develop a rotator cuff tear?

A: That's correct, yes.

Q: So those conditions in and of themselves do not necessarily cause rotator cuff tears?

A: They contribute to the development, but they don't specifically cause, no.

Q: Okay. So it is the presence of one or both of those conditions plus something else that culminates in a rotator cuff tear; is that correct?

A: Yes.

Q: So would it be fair to describe that as a – a predisposing factor or a risk for – something that creates an increased risk of a rotator cuff tear?

A: I agree with that, yes.

{¶ 11} Based on the testimony of Dr. Sohn and Dr. Gula, Williams requested the following jury instruction on dual causation:

"Proximate cause" is an event that, in the natural and continuous sequence, directly produces the injury and without which the injury would not have occurred. It is not necessary that the Plaintiff's employment was the sole or exclusive cause of the injury. An injury may have more than one proximate cause. Where two conditions or events combine to produce an injury, each of these conditions or events is a proximate cause of that injury. *Murphy v. Carrolton*, 61 Ohio St.3d 585, 575 N.E.2d 828 (1991).

{¶ 12} Williams argued that this jury instruction was warranted by the experts' testimony, primarily because Dr. Sohn had testified that the Type II acromion and AC joint arthritis were "risk factors that *combined with* the repetitive overhead activity" to cause Williams' rotator cuff tear, and because Dr. Gula had stated that Williams' predisposing factors "*contributed to* the development" of the rotator cuff tear.

{¶ 13} Chrysler objected to the proposed instruction, arguing that both experts discussed the Type II acromion and AC joint arthritis as mere predisposing risk factors—not separate, proximate causes. Chrysler argued that the experts presented competing single-causation theories: Dr. Sohn opined that Williams' injury was caused by a work-related "overuse mechanism," while Dr. Gula opined that the injury was caused by natural deterioration. Chrysler argued that a dual-causation instruction was therefore inappropriate because neither expert testified that there was more than one proximate cause of Williams' injury.

{¶ 14} Chrysler also argued that to the extent that Williams' preexisting risk factors were to be viewed by the court as "particular predispositions, susceptibilities, and sensitivities" that made Williams more likely to be injured under circumstances that would not injure an otherwise normal, healthy employee, a dual causation instruction was unnecessary because the court intended to provide the following "eggshell plaintiff" instruction to the jury:[1]

---

[1] Chrysler objected to the "eggshell plaintiff" jury instruction, but that objection was overruled by the court.

Employers take their employees as they find them, and assume the risk that an employee's previous physical condition or state of health may cause him or her to be injured as a result of events or activities that would not harm an otherwise healthy person. An employee's particular * * * predispositions, susceptibilities, and sensitivities are irrelevant to the determination of whether the employee is entitled to participate in the Workers' Compensation Benefits.

{¶ 15} Ultimately, the trial court sustained Chrysler's objection and found that the proposed dual causation instruction was improper because neither expert had testified that there was more than one proximate cause of Williams' injury.

{¶ 16} The jury found that Williams was not entitled to participate in the workers' compensation fund for "full thickness tear right rotator cuff" and disallowed her claim.

{¶ 17} Williams appealed and asserts a single assignment of error for our review:

The trial court erred, to Appellant's prejudice, in failing to instruct the jury that an injury may have more than one proximate cause, and where two events or conditions combine to produce an injury, each of those conditions or events is a proximate cause of that injury.

**{¶ 18}** As explained further below, we find that the trial court did not err in failing to instruct the jury on dual causation because neither expert witness opined that there was more than one proximate cause of Williams' rotator cuff tear.[2]

## Law and Analysis

**{¶ 19}** An appellate court will not overturn a trial court's jury instruction on appeal absent a finding of abuse of discretion, when evaluated under the particular facts and circumstances of each case. *Kmotorka v. Wylie*, 6th Dist. Wood Nos. WD-11-018, WD-11-026, 2013-Ohio-321, ¶ 32-33; s*ee also State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An "abuse of discretion" implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court." *Motorists Mut. Ins. Co. v. Hohman*, 3d Dist. Shelby No. 17-06-08, 2007-Ohio-108, ¶ 26.

---

[2] Chrysler argues that we cannot consider the merits of Williams' appeal because she omitted "critical" portions of the record, and that without them, this court must "presume the validity of the lower court's proceedings and affirm." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Specifically, Chrysler argues that Williams' failure to include her own trial testimony, opening statements and closing arguments precludes her from supporting her assignment of error. We disagree. The issue on appeal is whether the record supports a jury instruction on dual causation, which requires a review of the medical expert testimony. *Aiken v. Industrial Comm.*, 143 Ohio St. 113, 117, 53 N.E.2d 1018 (1944) ("[T]he issue of causal connection between an accidental injury and subsequent death from disease, involves a scientific inquiry and must be determined by the testimony of competent medical witnesses."). Because the trial transcripts from both expert witnesses are part of the appellate record, the absence of other parts is not fatal to her appeal.

8.

Instead, we are to view jury instructions in their entirety to determine whether or not they constitute prejudicial error. *Id.*, citing *State v. Porter*, 14 Ohio St.2d 10, 235 N.E.2d 520 (1968).

{¶ 20} Jury instructions must be based on the evidence presented in a case. "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue." *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." *Feterle v. Huettner*, 28 Ohio St.2d 54, 275 N.E.2d 340 (1971), syllabus.

{¶ 21} To establish a right to participate in the workers' compensation fund, a claimant must show by a preponderance of the evidence that the injury arose out of and in the course of employment and that a direct and proximate causal relationship existed between the injury and the harm or disability. *Haynes v. Kielmeyer*, 6th Dist. Ottawa No. OT-06-037, 2007-Ohio-4089, ¶ 10-11. *See also Cook v. Mayfield*, 45 Ohio St.3d 200, 204, 543 N.E.2d 787 (1989). "In addition, when considering the issue of proximate cause in the workers' compensation context, the definition of and principles governing the determination of proximate cause in the field of torts are applicable." (Citations omitted.) *Haynes* at ¶ 11, citing *Murphy* at 587. "The proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces

9.

that event and without which that event would not have occurred." *Aiken*, 143 Ohio St. at 117, 53 N.E.2d 1018.

{¶ 22} Moreover, "[i]t is a well-established principle of tort law that an injury may have more than one proximate cause." *Murphy* at 587. A dual causation instruction is warranted where there is evidence of two or more proximate causes of an injury. *Id.* at syllabus. ("Where a dependent person claiming death benefits under the workers' compensation laws produces sufficient evidence to allow reasonable minds to conclude that there was more than one proximate cause of death, a jury instruction on dual causation should be given.")

{¶ 23} Williams does not dispute this general proposition of law regarding dual causation. She also concedes that neither physician expressly stated that there was more than one proximate cause of her injury. Instead, Williams focuses on the following language from the *Murphy* opinion: "In Ohio, when two factors combine to produce damage or illness, each is a proximate cause." *Id.* at 588, quoting *Norris v. Babcock & Wilcox Co.*, 48 Ohio App.3d 66, 67, 548 N.E.2d 304 (9th Dist.1988). Williams interprets this sentence to mean that where a claimant has one or more risk factors that are incapable of independently causing an injury on their own, such risk factors should nonetheless be viewed as separate, legally-significant "proximate causes" if they somehow combined with another event that caused the claimant's injury. Williams argues that a dual causation instruction was therefore appropriate because both medical experts recognized that her predisposing risk factors somehow combined with another

10.

event that caused her rotator cuff tear. That is, Dr. Sohn opined that her risk factors "combined with" her repetitive work activity to cause her injury, and Dr. Gula opined that, in general, such risk factors can "contribute to the development" of a rotator cuff tear if "something else" occurs.

{¶ 24} Williams also maintains that the experts' failure to explicitly state that her Type II acromion, bone spur, or AC joint arthritis were separate "proximate causes" of her injury is immaterial because such "magic words of causation" are not necessary. Williams argues that the experts' testimony, when viewed in their totality, can reasonably be understood as stating that Williams' predisposing conditions did, in fact, proximately cause her injury.

### 1. Dual Causation Requires More than One Proximate Cause

{¶ 25} First, regarding the legal standard for dual causation, Williams misinterprets *Murphy*. In *Murphy*, the decedent suffered a work-related lumbosacral strain on October 23, 1964 and then died from a massive pulmonary embolism almost 18 years later. At trial, his widow requested a dual causation jury instruction, which was denied by the trial court and that ruling was affirmed by the appellate court. The Supreme Court of Ohio then reversed, finding that a dual causation jury instruction was warranted because the record contained "sufficient evidence to allow reasonable minds to conclude that there was more than one proximate cause of death." *Murphy* at 591. That is, appellant's medical expert opined that while the decedent died "from a massive pulmonary embolism," he also testified that "he believed that the decedent's death was

directly and proximately caused by the October, 1964 injury." *Id.* at 590. Thus, a dual causation instruction was appropriate because the evidence supported two separate and direct proximate causes of the decedent's death: (1) a massive pulmonary embolism and (2) the October 1964 injury.

{¶ 26} When the Supreme Court of Ohio stated the following in *Murphy*: "In Ohio, when two factors combine to produce damage or illness, each is a proximate cause," this language must be read in conjunction with the underlying facts (which, as explained, supported two separate, direct proximate causes of death) and the controlling point of law stated in the syllabus.[3] The *Murphy* syllabus provides that a jury instruction on dual causation should be given only where "there was more than one proximate cause" of the injury, which in that case was death. *Murphy* at syllabus.

{¶ 27} Accordingly, we interpret the *Murphy* language that Williams relies upon (and that she included in her requested dual causation instruction) to mean that when an injury has more than one proximate cause, then "*each* is a proximate cause," even when they combine to produce damage or illness. Or, in other words, separate proximate causes do not become one, single cause simply because they somehow combined before the injury occurred. It does not mean, as Williams argues, that mere "risk factors" or

---

[3] When the Supreme Court of Ohio decided *Murphy* in 1991, former Rule 1(B) for the Reporting of Opinions stated that "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." The current rule, adopted in July 2012, provides that "[t]he law stated in an opinion of the Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes." Rep.Op.R. 2.2.

12.

"predisposing conditions" —i.e., factors or conditions that cannot cause injury or damage on their own—should nonetheless be viewed as separate and distinct "proximate causes" for purposes of dual causation simply because they somehow combined with another event that *did* cause the injury. Rather, dual causation is only applicable where the evidence establishes two or more separate and independent proximate causes of injury. *See Leasure v. UVMC*, 2d Dist. Miami No. 2016-CA-21, 2017-Ohio-7196, ¶ 22 ("Dual causation would only be applicable in the instant case if [the plaintiff] established that her non-work related health problems associated with her obesity and advanced age as well as her 1982 work injury were both *separate and independent causes* of her lumbar spondylosis."). (Emphasis added.)

### 2. The Record Does Not Support a Jury Instruction on Dual Causation

{¶ 28} Williams concedes that neither Dr. Sohn nor Dr. Gula expressly opined that there was more than one proximate cause of Williams' rotator cuff tear. Indeed, at the charge conference before the trial court, the court stated: "[I]t's clear that you are unable to point to anything in the record where there's an expert opinion to a reasonable degree of medical certainty that there's more than one proximate cause here?" And Williams' counsel responded: "That's correct. That is true."

{¶ 29} Williams argues, however, that while neither expert expressly stated, to a reasonable degree of medical certainty, that Williams' predisposing conditions were separate "proximate causes" of her rotator cuff tear, such "magic words of direct causation" are not required. Williams maintains that the expert testimony, when viewed

13.

it its totality, contains sufficient evidence to allow a reasonable mind to conclude that there was more than one proximate cause of Williams' injury. *Murphy* at 591 ("In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.").

{¶ 30} Williams is correct that medical evidence of causation need not be couched in "legally precise language." *Swanton v. Stringer*, 42 Ohio St.2d 356, 360, 328 N.E.2d 794 (1975); *see also Oswald v. Connor*, 16 Ohio St.3d 38, 476 N.E.2d 658 (1985) (recognizing that a medical expert witness does not need to recite "magic words of direct causation" to establish a causal relationship but, rather, the expert testimony should be viewed "in its totality" to determine if there is sufficient evidence to support a finding of causation.). We find, however, that the expert testimony in this case, when viewed in its totality, does not contain sufficient evidence from which a reasonable mind could conclude that Williams' rotator cuff tear had more than one proximate cause.

{¶ 31} Dr. Sohn testified that there are three potential causes of a rotator cuff tear: (1) "acute trauma," (2) "attritional," and (3) "overuse mechanism." He was then asked to give his opinion on the direct and proximate cause of Williams' rotator cuff tear, and Dr. Sohn selected one of the three potential causes: a work-related "overuse mechanism."

{¶ 32} Although Dr. Sohn then stated that the Type II acromion and AC joint arthritis were "risk factors that combined with the repetitive overhead activity," this is not

sufficient evidence from which a reasonable mind could conclude that these "risk factors" were additional proximate causes of Williams' rotator cuff tear. Indeed, if Dr. Sohn believed that Williams' Type II acromion, bone spur, or AC joint arthritis could have proximately caused this injury, he would have included these conditions in his list of potential causes of rotator cuff tears. He did not. We therefore assume that Dr. Sohn meant precisely what he said: Williams' injury was directly and proximately caused by her repetitive work activity, and her non-work related health conditions were predisposing "risk factors."

{¶ 33} Moreover, although Dr. Sohn also testified that "both the bone spur and the repetitive reaching up are *contributory causes* to the development of the rotator cuff tear," we note that he later corrected himself and stated that the presence of a bone spur "is not a cause" but can "make an individual more susceptible to rotator cuff injury."

{¶ 34} In sum, viewed in its totality, Dr. Sohn's testimony supports a finding that Williams' rotator cuff tear had one proximate cause: work-related "overuse mechanism." His trial deposition does not contain sufficient testimony from which a reasonable mind could conclude that Williams' injury had more than one proximate cause.

{¶ 35} Dr. Gula's testimony does not support a dual causation theory either. Viewed in its totality, Dr. Gula provided only one proximate cause of Williams' rotator cuff tear: natural deterioration. That is, he described the injury as "a longstanding chronic condition that didn't happen in December 2014," and stated that the tear took "years to develop" through "activities of daily living." Moreover, Dr. Gula testified that

15.

a Type II acromion and AC joint arthritis "contribute to the development, but don't specifically cause" rotator cuff tears, and further stated that these conditions are appropriately described as "predisposing factor[s] * * * that create an increased risk of a rotator cuff tear."

{¶ 36} Thus, rather than supporting a dual causation theory, the two medical experts presented competing single-causation theories: Dr. Sohn asserted that the rotator cuff tear was caused by work-related overuse, and Dr. Gula opined that the injury was caused by natural deterioration. Dual causation was not at issue in this case.

{¶ 37} A similar situation was recently addressed in *Leasure v. UVMC*, 2d Dist. Miami No. 2016-CA-21, 2017-Ohio-7196. There, the court interpreted dual causation to apply in the following situations:

> Dual causation would only be applicable in the instant case if [the plaintiff] established that her non-work related health problems associated with her obesity and advanced age as well as her 1982 work injury were both separate and independent causes of her lumbar spondylosis. At trial, evidence was adduced which supported only two alternative theories of causation for [plaintiff's] lumbar spondylosis, to wit: flow-through *or* natural deterioration. The theory of dual causation is simply not supported by the record. *Id.* at ¶ 22.

{¶ 38} Similarly here, two alternative theories of causation were presented: work-related overuse *or* natural deterioration. The record lacked sufficient

evidence to suggest that Williams' non-work related health problems were separate and independent causes of her injury. Here, as in *Leasure*, the theory of dual causation is not supported by the record.

{¶ 39} Finally, we note that the experts' trial depositions, when viewed in their totality, are sufficient to support a reasonable conclusion that Williams' Type II acromion, bone spur, and AC joint arthritis made her more susceptible to a rotator cuff tear. As we recognized in *Luettke v. Autoneum N. Am., Inc.*, 6th Dist. Lucas No. L-14-1236, 2015-Ohio-3210, the "eggshell plaintiff" rule in Ohio recognizes that,

> [t]he employer takes an employee as he finds him and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person. If that injury is the proximate cause of the death or disability for which compensation is sought, the previous physical condition is unimportant and recovery may be had independently of the pre-existing weakness or disease. *Id.* at *18, quoting *Hamilton v. Keller*, 11 Ohio App.2d 121, 127-128, 229 N.E.2d 63 (3rd Dist.1976).

{¶ 40} Here, the trial court provided an "egg shell plaintiff" instruction, over Chrysler's objection, instructing the jury that "an employee's particular predispositions, susceptibilities, and sensitivities are irrelevant to the determination of whether the employee is entitled to participate in the Workers' Compensation Benefits." Although the propriety of the "eggshell plaintiff" instruction in this particular case is not before us,

17.

we note that, assuming that the evidence supported that instruction, it would have been inconsistent for the court to instruct on both dual causation *and* the eggshell plaintiff rule. The same evidence cannot support both of these jury instructions: if the evidence established that Williams' non-work related health conditions were "particular predispositions, susceptibilities or sensitivities" that made a rotator cuff tear more likely to occur (eggshell plaintiff), then the evidence also established that these conditions were not separate proximate causes of her rotator cuff tear (dual causation).

## Conclusion

{¶ 41} A strong presumption exists in favor of the propriety of jury instructions. *Helfrich v. Mellon*, 5th Dist. Licking No. 06-CA69, 2007-Ohio-3358, ¶ 162. We find that the trial court did not act unreasonably, arbitrarily, or unconscionably when it denied Williams' request to instruct the jury on the issue of dual causation. Therefore, Williams' sole assignment of error is not well-taken, and the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.         _____
                  JUDGE

James D. Jensen, P.J.

                 _____
Christine E. Mayle, J.           JUDGE
CONCUR.

                 _____
                  JUDGE