[Cite as *Harcourt v. Strassel Constr. Co.*, 2026-Ohio-675.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| JERALD HARCOURT, | : | APPEAL NO. | C-250145 |
| | | TRIAL NO. | A-2400853 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| STRASSEL CONSTRUCTION CO., | : | *JUDGMENT ENTRY* | |
| Defendant, | : | | |
| and | : | | |
| JOHN LOGUE, ADMINISTRATOR BUREAU OF WORKERS' COMPENSATION, | : | | |
| | : | | |
| Defendant-Appellee. | : | | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 2/27/2026 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *Harcourt v. Strassel Constr. Co.*, 2026-Ohio-675.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| JERALD HARCOURT, | : | APPEAL NO. | C-250145 |
| | | TRIAL NO. | A-2400853 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| STRASSEL CONSTRUCTION CO., | : | *O P I N I O N* | |
| Defendant, | : | | |
| and | : | | |
| JOHN LOGUE, ADMINISTRATOR BUREAU OF WORKERS' COMPENSATION, | : | | |
| | : | | |
| Defendant-Appellee. | : | | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 27, 2026


*Becker & Cade* and *Dennis A. Becker,* for Plaintiff-Appellant,

*Dave Yost,* Ohio Attorney General, and *Jessica Rodkey,* Assistant Attorney General, for Defendant-Appellee.

**NESTOR, Judge.**

{¶1} The trial court ruled in favor of the defendant-appellee Ohio Bureau of Workers' Compensation ("BWC") and Strassel Construction Co. because it found that plaintiff-appellant Jerald Harcourt did not meet his burden of proof to amend his previous BWC claim. Harcourt challenges this judgment on appeal. He argues that the trial court erred by failing to find his new injury was caused by his original injury; he argued that his new injury was a flow through condition of his original injury. Because the trial court's judgment was not against the manifest weight of the evidence, we affirm the judgment.

## I.  Factual and Procedural History

{¶2} On November 21, 2007, Harcourt was working on a roof when he fell eight feet and fractured his back. Harcourt testified that prior to his fall he had no problems with his back and had not received treatment. In the weeks following the fall, his injury worsened. About six weeks after the injury, Harcourt had his first back surgery on January 4, 2008. In that surgery, the surgeon screwed his bottom thoracic vertebra (T12) to his top lumbar vertebrae (L1 and L2). Because he fell and injured himself at work, Harcourt had a claim with the BWC for the condition of a closed fracture of his top lumbar vertebrae.

{¶3} Harcourt's back pain continued and he had his second surgery on September 10, 2010. The BWC amended his claim to include vertebrae lower in his back ("a herniated disk at L4-5 . . . substantial aggravation of pre-existing spinal stenosis at L4-5, as well as facet arthropathy of the lumbar spine, substantial aggravation of pre-existing degenerative disc disease at three levels, at L3-4, L4-5, and L5-S1"). His second surgery focused on fusing his lower lumbar vertebrae (L-3-4, L4-5, and L5-S1).

{¶4} Even after his second surgery, he struggled with leg pain. He received epidural steroid injections periodically in the L1 region and later underwent surgery. Harcourt underwent his third surgery on January 7, 2021. In that procedure, a new surgeon, Dr. Neumann, removed all the hardware from the first two surgeries. Dr. Neumann then fused seven back bones together (L1 to the sacral vertebrae). Harcourt testified that his back significantly improved after this surgery. His only other surgical procedure was a gallbladder removal in 2016.

{¶5} On April 15, 2022, Harcourt requested that the BWC amend his claim to include adjacent segment syndrome at L2-3 as a flow through condition of his original injury. This amendment would cover the third surgery. The BWC denied the claim and Harcourt appealed this administrative decision to the trial court.

{¶6} In the trial court, Harcourt, Dr. Neumann, and the BWC's doctor, Dr. Vogelstein, testified in a bench trial. Dr. Neumann and Dr. Vogelstein testified through their depositions. Dr. Neumann stated in his deposition that the first two surgeries put pressure on the L2-3 vertebrae, causing the adjacent segment syndrome. This is because the first surgery fused L2 to the vertebrae above it, and then the second surgery fused L3 to the vertebrae below it. L2 and L3 remained unfused and as a result that was the only area of motion in Harcourt's lower back. Dr. Neumann said during his deposition that it was his opinion that the adjacent segment syndrome was a direct consequence of the two prior procedures. Dr. Neumann testified that the adjacent segment syndrome was a flow through from the two prior surgeries.

{¶7} Dr. Vogelstein found otherwise. He stated, "[I]n my opinion [Harcourt] does not have adjacent segment syndrome at L2-3." It was Dr. Vogelstein's opinion that Harcourt did not even have adjacent segment syndrome, so the claim could not be amended. He based this finding on two CT scans Harcourt had taken; the first was

4

in 2016 during the gallbladder removal and the second was in 2020 before Harcourt's third surgery. Dr. Vogelstein said, "[T]he findings at L2-3 were exactly the same, so there had been no progression of his disease at L2-3 that would be consistent with adjacent segment disease." Dr. Vogelstein attributed Harcourt's pain to his age and "the natural deterioration of tissue as the routine arthritic changes that happen to all of us over 10 to 15 years."

{¶8} In its decision, the trial court observed that the case was a classic battle of the experts. It noted that its job was to "make a finding that indicates the Plaintiff has proved or has not been able to prove by a preponderance of the evidence that the roof falling accident of 2008 [sic] is the cause of the claimed condition of adjacent segment syndrome at the L2-3 level." Ultimately, the trial court held that it could not "give more weight or importance to the findings/opinions of Dr. Neumann versus Dr. Vogelstein." The judge noted "that natural degenerative disease does occur to persons in situations as presented by the Plaintiff." The trial court concluded that Harcourt did not meet his burden of proof and the court found in favor of the BWC. Harcourt timely appealed, bringing two assignments of error.

## II. Analysis

{¶9} Harcourt assigns two errors. The first is that the trial court's judgment was against the manifest weight of the evidence. The second is that trial court committed reversible error when it failed to apply the rule of dual causation. For the sake of clarity, however, we will address his second assignment of error first.

### A. Second Assignment of Error

{¶10} For Harcourt "[t]o establish a right to participate in the workers' compensation fund," he "'must show by a preponderance of the evidence that the injury arose out of and in the course of employment and that a direct and proximate

causal relationship existed between the injury and the harm or disability.'" *Dubose v. McCloud*, 2020 Ohio App. LEXIS 3858, *6 (1st Dist. Oct. 21, 2020), quoting *Williams v. Chrysler First Fin. Servs. Co.*, 2017-Ohio-7778, ¶ 21 (6th Dist.). Since adjacent segment syndrome is not Harcourt's original injury, he must prove that it is a "flow through" injury. *Id.* Harcourt has the burden then of showing "'that the previously allowed injury was the proximate cause of the [flow through] injury.'" *Id.*, quoting *Jones v. Med. Mut. of Ohio*, 2004-Ohio-746, ¶ 9 (8th Dist.).

{¶11} Courts have defined proximate cause as "'that in which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.'" *Id.*, quoting *Jones* at ¶ 5. The principles of proximate cause in torts are applicable in the workers' compensation context. *Id.* at *7, quoting *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 587 (1991). "'It is a well-established principle of tort law that an injury may have more than one proximate cause.'" *Id.*, quoting *Murphy* at 587. This principle applies to workers' compensation claims; it is permissible for a court to determine that more than one factor "'combine[d] to produce damage or illness [and] each is a proximate cause.'" *Id.*, citing *Murphy* at 588, quoting *Norris v. Babcock & Wilcox Co.* 48 Ohio App.3d 66, 67 (9th Dist. 1988).

{¶12} Determining proximate cause and if an injury has dual causes is "'a factual question to be resolved by the fact-finder.'" *Id.*, quoting *Murphy* at 590. Because proximate cause is an issue of fact, appellate courts "'will not reverse the trial court's judgment unless it is against the manifest weight of the evidence.'" *Id.*, quoting *Jones* at ¶ 4. Harcourt, however, argues that a different standard of review should apply and directs us to *Dubose* to argue that his case should have the same outcome.

{¶13} In *Dubose*, Dubose was injured at work and required knee replacement

surgery. *Dubose*, 2020 Ohio App. LEXIS 3858, at *2. Years later, Dubose struggled with knee pain requiring a second knee replacement surgery. *Id.* at *3. Unfortunately, the second surgery did not fix the pain, and the surgeon told Dubose "there was nothing more he could do to help." *Id.* Months after the surgery, Dubose was diagnosed with Depressive Disorder, not otherwise specified. *Id.* Dubose sought to amend her original claim and include her Depressive Disorder in her workers' compensation claim. *Id.* at *4. The BWC denied her amendment to the claim and the case was appealed to the common pleas court. *Id.*

**{¶14}** Dubose's expert testified that "her depression directly resulted from her workplace injury." *Id.* The defense's expert testified that her depression was caused by a slew of other sources, but critically, he agreed that the work injury was "one of the factors that contributed to or caused [Dubose] to have this depressive order[.]" *Id.* at *5. This was a concession that the work injury was a proximate cause of Dubose's Depressive Disorder. *Id.* The trial court applied the wrong legal standard and did not find in Dubose's favor because it determined the Depressive Disorder was not a foreseeable injury from the knee injury. *Id.* at *9-10. The trial court did not consider dual causation and looked only to foreseeability. *Id.*

**{¶15}** On appeal, this court reversed the trial court's determination in *Dubose*. *Id.* at *2. Since the trial court failed to use the correct legal standard, it was not a factual issue. Therefore, we reviewed the legal issue under a de novo standard of review. *Id.* at *8. We reversed the trial court's judgment because "an injury may have more than one proximate cause," and the trial court needed to consider dual causation, not foreseeability. *Id.* at *7, quoting *Murphy*, 61 Ohio St.3d at 587.

**{¶16}** Unlike the expert's concession in *Dubose*, the case before us presents a factual dispute. Dr. Vogelstein never conceded that the roof fall could be one of the

7

causes of the adjacent segment syndrome, the flow through condition. To the contrary, Dr. Vogelstein testified that Harcourt did not even have adjacent segment syndrome and any pain he experienced was due to age.

{¶17} Harcourt argues in his brief that because "the Trial Court concluded either theory of causation [presented by each party] was plausible," the trial court determined each party's theory was a proximate cause. That is inconsistent with the record below. The trial court stated that it could not "give more weight or importance to the findings/opinions of Dr. Neumann versus Dr. Vogelstein," and that Harcourt failed to prove his case by a preponderance of the evidence. One expert testified that Harcourt had the flow through condition and the other testified that he did not. In weighing the experts equally, the trial court concluded that Harcourt failed to meet his burden of proof.

{¶18} Dr. Vogelstein testified that Harcourt did not have adjacent segment syndrome, and the trial court did not find that the fall was a proximate cause of the adjacent segment syndrome so the principles of dual causation did not apply.

{¶19} Having determined the principles of dual causation do not apply in this case, we overrule Harcourt's second assignment of error.

### B. First Assignment of Error

{¶20} In his first assignment of error, Harcourt argues that the trial court's judgment was against the manifest weight of the evidence because it did not determine that the original work injury was a proximate cause of Harcourt's adjacent segment syndrome.

{¶21} We review whether Harcourt may amend his claim to participate in the workers' compensation fund under a manifest weight of the evidence standard. *Krull v. Ryan*, 2010-Ohio-4422, ¶ 9 (1st Dist.). Under a manifest weight review we presume

the correctness of a trial court's findings of fact, given that the trial court had the opportunity to observe the witnesses and assess their credibility. *Qiming He v. Half Price Heating & Air*, 2021-Ohio-1599, ¶ 7 (1st Dist.). Moreover, in this posture, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Where the evidence is capable of more than one interpretation, a reviewing court applying manifest-weight review to a civil judgment must apply the interpretation that is consistent with the verdict and the judgment. *Id.*

**{¶22}** Harcourt bore the burden at trial to prove that he developed adjacent segment syndrome as a flow through condition of his 2007 injury. A flow through injury "is a condition [that] develop[ed] in a body part not originally alleged to have been injured, but [has] been injured as a result of conditions previously allowed in the claim." *Wilson v. Conrad*, 1999 Ohio App. LEXIS 1661, *5 (1st Dist. April 16, 1999), citing R.C. 4123.84(C). That means Harcourt first had to prove that he developed adjacent segment syndrome, and then that the cause of the adjacent segment syndrome was the injury in his previously allowed claim.

**{¶23}** Harcourt failed to meet this burden below. The trial court found both experts equally credible. The trial court did not credit the plaintiff's expert more than the defendants' expert. As such, Harcourt did not prove by a preponderance of the evidence that he had adjacent segment syndrome. The trial court relied on Dr. Vogelstein's testimony that Harcourt's CT scans did not show any change between the L2 and L3 vertebrae between his gallbladder surgery and his third spinal surgery. This evidence provided a basis for Dr. Vogelstein to reach the conclusion that Harcourt had not developed adjacent segment syndrome. The trial court concluded that the pain

Harcourt experienced was caused by natural degenerative disease.

**{¶24}** When reviewing the weight of the evidence presented, "'the weight to be given [to the] evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *Id.* at *5-6, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Here, the trial court determined both doctors were credible, and as a result, Harcourt failed to meet his burden. The trial court's judgment was not contrary to the manifest weight of the evidence.

**{¶25}** Accordingly, we overrule Harcourt's first assignment of error.

### III. Conclusion

**{¶26}** Having overruled both assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

**CROUSE, P.J.,** and **BOCK, J.,** concur.